THE FLINT & PERE MARQUETTE RAILROAD COMPANY v. THE DETROIT & BAY CITY RAILROAD COMPANY ET AL.

*Railroad companies—Condemnation proceedings for obtaining right of crossing—Notice of appeal—Objections to jurisdiction—Sufficiency of petition—Instructions to commissioners—Effect of condemnation—Manner of making crossing—Damages.*

1. The notice of appeal from the report of the jury or commissioners in condemnation proceedings under How. Stat. § 3337, must point out the *error* and *defects* complained of with such *particularity* that the attention of the appellee and of the Court will be at once *precisely* directed to them; and all objections not *so* specified will be deemed to have been waived. *Michigan Air Line Ry. v. Barnes*, 44 Mich. 225.

2. When a statute confers upon a court of record jurisdiction over certain proceedings, a *general* objection that the court has no jurisdiction is insufficient, but, if certain steps have been omitted which counsel deem *essential* to *confer* jurisdiction, they should be *pointed* out in the objection.

3. A petition for the condemnation of property for the use of a railway company, which sets up with sufficient certainty the *rights* which the petitioner seeks to acquire, and alleges that the property thus sought is *required* for the public use, is sufficient, the word *required*, in the sense in which it is used, being synonymous with the word *necessary*, and conveying the same meaning.

4. How. Stat. § 3350, as amended by Act 174, Laws of 1883, § 36,[1] re-

---

[1] Amended by Act No. 236, Laws of 1887.

quires that the right to cross a railroad company's track by another railroad shall be acquired by purchase or condemnation, in the same manner as prescribed by the act for obtaining title to real estate or other property, which act, in prescribing *what* the petition shall contain, does not require the petitioner to state whether such crossing is to be made *at* grade, or *above* or *below* the track to be crossed; and while, as suggested in *Toledo, A. A. & N. M. Ry. Co. v. Detroit, L. & N. R. R. Co.*, 62 Mich. 574, under a petition setting forth *such* facts, the commissioners or jury might receive evidence bearing upon *each* mode of crossing, and assess damages accordingly, the absence of *such* statements will not render the petition defective.

5. Where, in such a case, the petition defines the *manner* of crossing, the damages would naturally be awarded on *that* basis; but, in case of disagreement between the two companies as to such *manner* of crossing, the petitioner has no right to cross, or in any manner interfere with, the respondent's property, until the crossing board has determined *that* question; and, in case the mode of crossing determined upon by the board is different from that specified in the petition, new proceedings must be taken to condemn the right to cross in the *manner* designated by such board, and to assess the damages upon *that* basis.[1]

6. In the case of *Toledo, A. A. & N. M. Ry. Co. v. Detroit, L. & N. R. R. Co.*, 62 Mich. 564, the objections to the petition held well taken were—

   *a*—That it showed no effort to obtain the property by agreement before taking steps to condemn.
   *b*—That it sought to obtain greater rights than the law allows to be condemned.
   *c*—That it did not properly describe the property sought to be condemned.

   In *this* case, the petition is open to none of these objections.

7. It is not error for the court or officer before whom condemnation proceedings are being had to refuse to instruct the commissioners at the request of the respondent. No such duty is imposed by law, and such instructions would not have been binding on the commissioners if given.

8. How. Stat. § 3335, does not require the commissioners or jury in a condemnation proceeding to specify each particular item of damage or compensation allowed, but contemplates that a *general* finding will be made.

---

[1] CHAMPLIN, J., suggests an amendment to the statute, requiring the railroad company desiring to cross another railroad to apply by petition to the railroad crossing board, with notice to the other company, designating the designed point of crossing, and asking that the board determine the *manner* of crossing in case the *right* is acquired by the proper condemnation proceedings.

9. Where, in a condemnation proceeding to acquire a right of crossing over a railroad, the respondents placed before the commissioners *all* the testimony they desired upon *each* element of damage claimed by them as the result of the crossing sought, and the commissioners, after considering *all* of the testimony, reported that they had appraised the damage and compensation as well for the *value* of the property taken as for the *damages* resulting from such taking, unless the award appears to be *grossly* inadequate, or so much so as to give rise to the inference that the commissioners must have acted upon a wrong basis of estimating the damages, the award will not be disturbed.

10. In *ordinary* cases, the taking by a railroad company vests in it the exclusive *use* of the right of way for railroad purposes, and divests all persons made parties to the proceedings, by publication or otherwise, of all right, estate, and interest in such real estate, franchise, or other property until such right or title shall be again legally vested in them; and the effect of How. Stat. § 3337, is to deprive the owner of the *use* of the land taken.

11. Where the *right* of one railroad company to cross the track of another is acquired by condemnation proceedings, the *exclusive* use is not taken, and the damages sustained arise from *interference* with the *exclusive* use by the respondent of its track and right of way for railroad purposes.   In such a case the award of damages is governed by different considerations than those applied when a railroad company seeks to condemn the *right of way* over lands of private persons, in which case the value of the land taken would be included, while in the other no reason exists for including such value, for the reasons stated.

12. The stopping of trains at a railroad crossing, whether required by law as a police regulation, or by the duty of the company in order to secure the safety of passengers, is not an element which can be considered by the jury in estimating the damages and compensation to be made to a railroad company by another company for the right to cross its road.

13. How. Stat. § 3376 (amended by Act No. 174, Laws of 1883), requiring trains to come to a full stop before crossing the track of another railroad, is a police regulation enacted by the Legislature, designed to promote the public safety, and is as binding upon an *existing* road one as *newly* organized ;   and any inconvenience or annoyance or loss suffered in obeying such regulation is *damnum absque injuria.*

14. In the absence of a statute requiring railroad trains to come to a full stop before crossing another railroad track, the *duty* imposed by the circumstances upon the corporation to adopt and observe proper precautions to protect the lives of passengers takes the

force of law, and has its foundation on the same principles which underlie such a statute, which does not create a *new* duty, but compels the observance of one *already* incumbent on the corporation.

15. The cost of maintaining signals or a crossing system, as well as of a watchman, is a proper element to be considered by commissioners or a jury in awarding damages to a railroad company whose road is sought to be crossed by another railroad.

Appeal from Saginaw. (Gage, J.) Argued November 11, 1886. Decided January 20, 1887.

Appeal from the report of commissioners in condemnation proceedings. Affirmed. The facts are stated in the opinion.

*Henry Russel* (*Hanchett & Stark* and *Ashley Pond,* of counsel), for respondents and appellants.

*Wisner & Draper* (*William L. Webber,* of counsel), for petitioner and appellee.

[The opinion is so exhaustive in its discussion of the law and facts that an abstract of the briefs of counsel is omitted. —REPORTER.]

CHAMPLIN, J. The Flint & Pere Marquette Railroad Company filed its petition in the circuit court for the county of Saginaw for the purpose of condemning private property for the public use, under the power of eminent domain granted to railroad companies under the general railroad laws of this State.

The petition sets forth that the petitioner had surveyed the route for a proposed spur track, to be owned and operated by it, connected with its main line at a point near the west bank of the Saginaw river, in Saginaw county, and extending thence southerly, on the westerly side of Saginaw river, across the track and right of way of the "Saginaw Branch of the Detroit & Bay City Railroad," and terminating in the city of Saginaw. The petition then sets up the fact of the survey and map of

the route of the spur track, and the location thereof accordingly, the certificate and indorsement thereof by a majority of the directors, the approval thereof by the commissioner of railroads, and the filing of the map, certificate, and approval in the register's office of Saginaw county. It then states that the property therein described—

"Is required for the purposes of operating said railroad, and for the purposes of operating said spur-track, and that said property is required for public use, to wit, for the purpose of operating your petitioner's spur track railroad across said Saginaw Branch of the Detroit & Bay City Railroad;" and "the property to which your petitioner seeks to acquire title under the statute is required for public use."

The petitioner then describes the property, and proceeds to state that—

"The right and title which your petitioner seeks to acquire in and to the premises above described is the right and privilege of using the same for the purpose of constructing and operating its said spur track across the track and right of way of the said Saginaw Branch of the Detroit & Bay City Railroad, at the point above named, as designated on said map; the right of cutting the rail of the said Saginaw Branch of the Detroit & Bay City Railroad Company at such crossing, and inserting therein suitable frogs at the grade of the said Saginaw Branch of the Detroit & Bay City Railroad; and the right of using said premises jointly with the Detroit & Bay City Railroad Company, and its lessee, the Michigan Central Railroad Company, absolutely and fully as a railroad track for the passing and repassing of trains on and over the same, and also the right of maintaining and repairing the said track and crossing."

The petition contains the other allegations required by statute to be embraced in a petition filed for the purpose of acquiring title to real estate for railroad purposes; and it is not necessary to recapitulate them here.

The respondents appeared, and moved the court to dismiss the petition, upon the ground "that the court had no jurisdiction to entertain the proceedings, or to appoint the com-

missioners prayed for," which was overruled, and commissioners were appointed.

The respondents the Detroit & Bay City Railroad Company and the Michigan Central Railroad Company then requested the court, in writing, to instruct the commissioners that, in determining the damages and compensation to be awarded the respondents, they should take into account the following:

"1. The value of the property taken.

"2. The injury to the property of which the property taken is a part.

"3. That there may be required of the respondents the expense of putting in and maintaining interlocking switch and signal system.

"4. That the capacity of the respondents to carry over this part of its road may be diminished.

"5. That the speed of the respondents' trains may be diminished.

"6. That watchmen and signals may be required to be kept at the crossing by respondents.

"7. That respondents' trains will be required to stop before coming to the crossing.

"8. That, by reason of the crossing, time may be lost in the running of its trains.

"9. That damage may be done to respondents' bridge across Saginaw river by operating its road as required by the placing of this crossing at the proposed point."

The court refused to instruct the commissioners as requested, and gave them no instructions whatever.

The commissioners were sworn, and proceeded with the inquisition.

The respective parties appeared before them by counsel, and introduced testimony.

The commissioners also viewed the premises, and made their report to the court in writing, in which they stated that,—

"After hearing the proofs and allegations of the parties, and after all the testimony was closed, we, all being present and acting together, ascertained and determined that it is necessary to take and use the real estate and property described

in the petition [describing it] for the purposes of the Flint &
Pere Marquette Railroad Company, as mentioned and set
forth in its petition, and that such taking and using of such
property is a necessary public use of the same, and is a neces-
sary public benefit.

"Also, we, all being present and acting together, at the
same time ascertained, determined, and appraised the dam-
ages and compensation which ought justly to be made by
said Flint & Pere Marquette Railroad Company to the party
or parties owning and interested in said real estate and prop-
erty proposed to be taken for the purposes in said petition
described, as well for the value of the same as for the dam-
ages resulting from such taking, at the sum of one hundred
dollars."

This report was filed on the seventh day of August, 1886,
and on the tenth, the question of the confirmation of the re-
port being before the court, the parties being present by their
counsel, it was agreed between them that whatever sum is or
should be awarded should be awarded to the respondents
jointly; and thereupon, on motion of counsel for petitioner,
after hearing counsel for respondents in opposition thereto,
it was ordered that the report be confirmed.

Afterwards, and on the sixteenth of August, a more formal
order was entered.

Counsel for respondents filed in said proceedings their
exceptions thereto, as follows:

"IN THE CIRCUIT COURT FOR THE COUNTY OF SAGINAW.

" *In the Matter of the Petition of the Flint & Pere Marquette
Railroad Company v. The Detroit & Bay City Railroad
Company, The Michigan Central Railroad Company,
and the Union Trust Company of New York.*

"In this proceeding, the said respondents, the Detroit &.
Bay City Railroad Company, the Michigan Central Railroad
Company, and the Union Trust Company of New York,
and each of said respondents, except to the proceedings taken,
on the following grounds:

"1. That the said court refused to grant the respondents'

motion to dismiss the petition filed in the ·cause upon the ground that the court has no jurisdiction to entertain the proceedings, or to appoint the commissioners prayed for.

" 2. That the court had no jurisdiction to appoint the said commissioners who were appointed in said cause.

" 3. That the court refused to instruct the said commissioners as requested in writing by the respondents the Detroit & Bay City Railroad Company and the Michigan Central Railroad Company, which requests are filed in said proceedings, and are hereby referred to, and that the court refused to give each of said several requests; and this exception is to the refusal to give separately each of said requests.

" 4. That the respondents requested the said commissioners to take into account, in determining the damages and the compensation to be awarded, each of the said several grounds of damages specified in the said requests to said court for instructions to said commissioners, filed in writing as aforesaid, and in their report to state upon which of said several grounds they allowed damages and compensation; and that the said commissioners neglected and failed to comply with the said respondents' said request to them, and did not take into account said several grounds for damages and compensation, and did not state in their report upon or for which of said several grounds they allowed damages and compensation.

" 5. That the said commissioners did not state, in their said report, what were the grounds upon which they allowed damages and compensation, so that these respondents are not able to determine what were the grounds for or upon which damages and compensation were allowed.

" 6. That the said commissioners allowed for damages and compensation only for the value of the property taken.

" 7. That the said commissioners did not take into account each of the said several grounds for damages and compensation stated in said requests.

" 8. That the damages and compensation allowed and reported by said commissioners were and are insufficient, and in amount are inequitable and unjust towards these respondents.

" 9. That the statute under which the commissioners acted in determining the amount of damages and compensation to be allowed is unconstitutional, and is also in terms such as to render it impracticable for the commissioners acting under it to determine what are proper damages and compensation to be allowed.

"10. That the said court had no jurisdiction to confirm the report of the said commissioners.

"11. That the said court confirmed the report of the said commissioners, and the said respondents appeal from the said proceedings to the Supreme Court of the State of Michigan."

The objections specified in such appeal are as follows:

"1. That the said court refused to grant the respondents' motion to dismiss the petition filed in the cause, upon the ground that the court has no jurisdiction to entertain the proceedings, or to appoint the commissioners prayed for.

"2. That the court has no jurisdiction to appoint the said commissioners who were appointed in said cause.

"3. That the court refused to instruct the said commissioners as requested in writing by the respondents the Detroit & Bay City Railroad Company and the Michigan Central Railroad Company, which requests are filed in said proceedings, and are hereby referred to, * * * and that the court refused to give each of said several requests; and this exception is to the refusal to give separately each of said requests.

"4. That the respondents requested the said commissioners to take into account, in determining the damages and compensation to be awarded, each of the said several grounds of damages specified in the said requests to said court for instructions to said commissioners filed in writing, as aforesaid, and in their report to state upon which of said several grounds they allowed damages and compensation, and that the said commissioners neglected and failed to comply with the said respondents' said requests to them, and did not take into account said several grounds for damages and compensation, and did not state in their report upon or for which of said several grounds they allowed damages and compensation.

"5. That the said commissioners did not state in their said report what were the grounds upon which they allowed damages and compensation, so that these respondents are not able to determine what were the grounds for or upon which damages and compensation were allowed.

"6. That the said commissioners allowed for damages and compensation only for the value of the property taken.

"7. That the said commissioners did not take into account each of the said several grounds for damages and compensation stated in said requests.

"8. That the damages and compensation allowed and re-

ported by said commissioners were and are insufficient, and in amount are inequitable and unjust towards these respondents.

"9. That the statute under which the commissioners acted in determining the amount of damages and compensation to be allowed is unconstitutional, and is also in terms such as to render it impracticable for the commissioners acting under it to determine what are proper damages and compensation to be allowed.

"10. The said court has no jurisdiction to confirm the report of the said commissioners.

"11. That the said court confirmed the report of said commissioners."

How. Stat. § 3337, authorizing appeals to be taken to the Supreme Court from the appraisal or report of the commissioners, requires notice of such appeal to be given to the opposite party, and enacts that—

"Such notice shall specify the objections to the proceedings had in the premises, and the Supreme Court shall pass on such objections only; and all other objections, if any, shall be deemed to have been waived. Such appeal shall be heard by the Supreme Court at any general or special term thereof, on notice thereof being given according to the rules and practice of the Court. On the hearing of such appeal, the Court may direct a new appraisal before the same or new commissioners or jury, in its discretion."

Under this statute, it was held, in the case of *Michigan Air Line Ry. v. Barnes*, 44 Mich. 225, that—

"The obvious meaning of the statute is that the error and defects complained of shall be pointed out with such particularity that the attention of the appellee and of the Court will be at once precisely directed to them."

The first, second, tenth, and eleventh objections contained in the notice of appeal are open to this criticism.

The particular want of jurisdiction is not specified. When a statute confers upon a court of record jurisdiction over certain proceedings, a general objection that the court has no jurisdiction amounts to nothing. If certain steps have been omitted which it is deemed by counsel necessary to have been

taken in order to confer jurisdiction, the particular omission should be pointed out in the objection. This was not done in this case, and the statute is explicit that, unless the objections to the proceedings are specified, they shall be deemed to have been waived.

Attention is called in the briefs of counsel to what are claimed to be defects in the petition, in this:

1. That it prays simply for a crossing at grade.
2. That it does not aver that the taking of the property described in it is necessary for public use.

Were there any objections specified under which these points could be considered, I should still be of opinion that neither of them are well taken. The petition sets up with sufficient certainty the rights which the petitioner seeks to acquire, and alleges that the property which is thus sought is required for the public use. It is true, the statute provides that the petition shall state that the taking of the property is *necessary* for public use. But the word "*required,*" in the sense in which it is used in the petition in this case, is synonymous with the word "necessary." It conveys the same meaning.

At the time these proceedings were being had, the case of *Toledo, A. A. & N. M. Ry. Co. v. Detroit, L. & N. R. R. Co.,* 62 Mich. 564, was under advisement, but the decision had not been handed down. It was claimed upon the argument that, in view of what was said in that case, the petition in this case is fatally defective in not stating in a threefold manner that the petitioner desired to cross either at grade, above, or below the respondents' track, and that the jury should award damages and compensation based upon each method of crossing as should thereafter be determined by the crossing board provided for in Act 174 of the Session Laws of 1883.

I do not understand that to be the scope of the decision in that case. I regard what was said in that case about a

proper petition as merely suggestive, and as indicating that it would be proper for the commissioners or jury to receive evidence bearing upon each mode of crossing.

The statute requires that the right to cross or connect shall be acquired by purchase or condemnation, in the same manner as prescribed by the act for obtaining title to real estate or other property, and the act prescribes what the petition shall contain. If the petition contains what is required by the act, it is difficult for me to see how it can be fatally defective for not containing statements not so required; and there is no requirement that the petition shall state that the petitioner desires to acquire the land in question for the purpose of a crossing in either one of the three ways which the crossing board shall thereafter determine shall be done. The law presumes that the petitioner knows whether the railroad company desires to cross at grade or otherwise, and that it will petition to acquire the right to cross in the manner it deems most suitable for its own interests.

If the petition defines the manner, the damages would naturally be awarded on that basis. The company, however, will still have no right to cross, or in any manner interfere with, the respondents' property, in case of disagreement as to manner of crossing, until the crossing board has determined the manner of crossing,—whether at grade or otherwise; and, if it should turn out that the crossing board should determine that the crossing should not be made in the manner described in the petition upon which the right was acquired, it would necessitate a new petition to condemn the right to cross in the manner designated by the board, and an award of damages based upon that petition.[1]  But this result, in practice, will not be liable to happen, because the manner of crossing is dependent upon certain physical conditions of the locality, and the self-interest of the crossing road will always prompt

[1] See *Toledo, A. A. & N. M. Ry. Co. v. D., L. & N. R. R. Co.*, 63 Mich. 645.

a crossing either over or under, where it can be done without injustice to either company.

It, moreover, is common knowledge that a crossing either over or under another road would cause much less damage to the road crossed than a crossing at grade, and consequently damages which are assessed or awarded upon the basis of a crossing at grade must necessarily be greater than either of the other two methods; and, if properly allowed, it is not perceived how it can be a ground of serious complaint that another manner of crossing, causing less damages, may be adopted by the crossing board.

My own opinion is that the statutes ought to be so amended, with reference to crossings and connections of one railroad with another, as to require the company desiring to cross to apply, in the first instance, to the crossing board by petition, and notice to the other railroad company, designating the point at which it is designed to cross, to determine the manner of crossing in case the right to cross is acquired by the proper condemnation proceedings. The jury or commissioners would then be apprised of the manner in which the right would be exercised, and the proof of damages and compensation be directed to the exact point. As the statute stands now, it seems rather incongruous.

In the case last referred to the points above discussed were not the ones upon which the decision was based. The objections to the petition, which we held to have been well taken, were that it showed no effort to obtain the property by agreement with the respondents in that case before taking proceedings for condemnation; that it sought by petition to obtain greater rights in the respondents' property and franchises than the law allows in the condemnation proceedings; and that it did not properly describe the property which it sought to condemn. The petition in this case is open to none of these objections; and, as neither these nor others are pointed out in the objections upon which the appeal is based, the petition need not be further noticed.

I do not consider that any error was committed by the court in refusing to instruct the commissioners at the request of the respondents. The court might have done so had it thought proper. But it was not a duty imposed by law, and its instructions would not have been binding upon the commissioners had it done so. This has been settled by our previous adjudications, which were based upon satisfactory reasoning, and I see no good object to be accomplished in overruling them. *Toledo, A. A. & G. T. Ry. Co. v. Dunlap,* 47 Mich. 466; *Port Huron & S. W. Ry. Co. v. Voorheis,* 50 Id. 510; *Michigan Air Line Ry. v. Barnes,* 44 Id. 226.

The ninth objection, relating to the unconstitutionality of the statute authorizing private property to be condemned for the purpose of constructing spur tracks, was not insisted upon or argued upon the hearing, and I therefore do not pass upon it.

The fourth and fifth objections are based upon the failure of the commissioners to specify, in their report, the several grounds upon which they allowed damages and compensation. The statute[1] requires the commissioners to—

"Ascertain and determine the necessity of taking and using any such real estate or property for the purposes described; and, if they deem the same necessary to be taken, they shall ascertain and determine the damages or compensation which ought justly to be made by the company therefor to the party or parties owning or interested in the real estate or property appraised by them."

The commissioners in this case, after determining upon the necessity of the taking for the public use, reported that they had—

"Ascertained, determined, and appraised the damages and compensation which ought justly to be made by said Flint & Pere Marquette Railroad Company to the party or parties owning and interested in said real estate and property proposed to be taken for the purposes in said petition described,

---

[1] How. Stat. § 3335.

as well for the value of the same as for the damages result-
ing from such taking, at the sum of one hundred dollars."

It appears that the commissioners have complied with the
statute in the respect complained of. The statute nowhere
requires that the commissioners shall specify each particular
item of damage or compensation allowed. On the contrary,
it contemplates that a general finding will be made.

In the case of *Michigan Air Line Ry.* v. *Barnes,* 44 Mich.
222, the same objection was made, and decided by this Court.
In that case the jury reported in general terms, and it was
held sufficient, and that it was not necessary to specify what
damage was allowed on each separate cause. And in *Port
Huron & S. W. Ry. Co.* v. *Voorheis,* 50 Mich. 511, it was
said that—

" We regret the finding of the commissioners does not give
us more information upon the subject; but there is nothing
in the statute or practice yet established requiring them to be
more specific in their report of items for which they allow
damages or compensation, and there is no authority given to
compel such report if they fail to do so."

In view of the statute and our decisions above cited, I think
the fourth and fifth objections must be overruled.

The sixth, seventh, and eighth objections may be considered
together, and are all embraced in the eighth. The testimony
taken upon the inquest has, by consent of the parties, all been
returned, and is embodied in the printed record before us.
It appears from this that the respondents placed before the
commissioners all the testimony they desired upon each ele-
ment of damages claimed by them which would result to
them by reason of the taking petitioned for; and the com-
missioners, after consideration of all the testimony, have re-
ported that they have appraised the damage and compensa-
tion as well for the value of the property taken *as for the
damages resulting from such taking ;* and unless the damages
awarded appear to be grossly inadequate, or so much so as to
give rise to the inference that the commissioners must have

acted upon a wrong basis of estimating the damages, the award should not be disturbed.

The compensation must depend upon what property, rights, or franchises are taken by the petitioning railroad company, and the damages consequent thereon to the railroad company crossed. In ordinary cases, the taking by a railroad company vests in it the exclusive use of the right of way for railroad purposes; and the statute[1] provides that—

"All persons who have been made parties to the proceedings, either by publication or otherwise, shall be divested and barred of all right, estate, and interest in such real estate, franchise, or other property until such right or title shall be again legally vested in such owner."

The effect of this statute is to deprive the owner of the *use* of the land taken; but, when one railroad company acquires the right to cross the track and right of way of another, the case is different. Here the *exclusive* use is not taken. The damages do not arise from the deprivation of the use, but from interference with the exclusive use for railroad purposes; and hence the award is governed by different considerations than those applied when a railroad company seeks to condemn the right of way over lands of private persons. In one case the value of the land taken would be included in the damages and compensation; in the other there is no reason why it should be, because the owner, the railroad company, is not deprived of its use, nor is it divested or barred of all right, estate, and interest therein. The right acquired by the condemnation proceedings is the right to cross. The right condemned is the right to an exclusive use, which by virtue of the condemnation proceedings becomes converted into a common use as a right of way for both companies. The taking is not absolute, but qualified.

If the value of the land is included, and compensation made therefor, as in other cases, it will divest the railroad

---

[1] How. Stat. § 3337.

company of its interest and estate in the right of way included in the crossing, and it would follow that, if the company whose land was crossed desired to lay additional tracks along its original right of way, it would be obliged to acquire the right to do so by condemnation proceedings against the crossing road, and pay again for the value of the land, and all expenses and consequential damages.

It is not the contemplation of the law that a railroad company's right of way shall be severed by every railroad that crosses it, and its estate divested and transferred to the railroad company which crosses its right of way. *Lehigh Valley R. R. Co. v. Dover & Rockaway R. R. Co.*, 43 N. J. Law, 528. The statutes upon the subject must be construed together. The company organizing under the general railroad law does so in view of the statute which authorizes other roads to cross its right of way, by making just compensation.

In the case of *Grand Rapids, N. & L. S. R. R. Co. v. Grand Rapids & I. R. R. Co.*, 35 Mich. 273, it was said that the "franchises or property of one railroad company may be taken for the construction of another in all cases where the property of an individual might be, upon making compensation therefor."

In *Grand Rapids v. Grand Rapids & I. R. R. Co.*, 58 Mich. 648, it was held that the damage done to a railroad by having a highway run across it must necessarily include all additional expense entailed by such a crossing in making it safe and providing guards against accidents; that, under the Constitution, there must be just compensation, and this cannot be denied by law or by verdict.[1] See, also, *People v. Lake Shore & M. S. Ry. Co.*, 52 Mich. 277.

What elements of damages should be considered and included in the sum to be awarded as just compensation are not easily determined with certainty. The general rule of dam-

---

[1] See *Toledo, A. A. & N. M. Ry. Co. v. D., L. & N. R. R. Co.*, 62 Mich. 564.

ages is applicable to investigations of this kind,—that they cannot be allowed on mere conjecture, speculation, fancy, or imagination; they must be real, tangible, and proximate.

The respondents claim that they were entitled to damages—

1. For the cost of maintaining signals or crossing system.
2. For cost of watchman.
3. Cost of stopping trains.
4. Damages that might be done to respondents' bridge across Saginaw river in stopping and starting trains thereon within 800 feet of the crossing.
5. Damages occasioned by loss of time in running trains.
6. Damages caused by reason of the diminished capacity of the road.
7. That respondents might be required to put in an interlocking switch and signal system, and maintain the same.

It is not claimed that the evidence introduced was of that nature which would authorize the commissioners to award damages upon any of the claims made except the first three, and upon these it is claimed that the evidence showed that the result of establishing a crossing at the point named in the petition would impose upon the respondents an increased expense each year as follows:

| | |
|---|---|
| Cost of maintaining signals or crossing system, | $ 50 |
| Cost of watchman, - - - - - | 425 |
| Cost of stopping trains, - - - - | 300 |
| Being a total of - - - - - | $775 |

The commissioners having allowed only $100 for the land taken and the consequential damages, the respondents claim such allowance is grossly inadequate in view of the above items which the evidence tended to establish.

The question as to what elements of damages should enter into and form a basis of an award when one railroad crosses another has been before the courts of some of our sister states; and, while the decisions have not been entirely uniform, the principles underlying them all point to an allowance which shall secure a just compensation within the recog-

nized rules of evidence relating to damages, as including all loss or injury which is the direct result of the appropriation of the land to the new use. They also recognized that there are elements of damage which, aside from being uncertain, remote, or conjectural, are the consequence of regulations by the legislature designed to secure the safety of the public, which are imposed upon all railroad companies alike, and which, in so far as they do not involve any structural change in the property itself in order to make it conform to the new condition, do not afford a basis for compensation.

The result of the decision in Massachusetts was announced by Mr. Chief Justice Gray in *Mass. Cent. R. R. Co. v. Boston, C. & F. R. R. Co.*, 121 Mass. 124, tersely as follows:

"A railroad corporation across whose road another railroad or a highway is laid out has the like right as all individuals or bodies politic and corporate, owning land or easements, to recover damages for the injury occasioned to its title or right in the land occupied by its road, taking into consideration any fences or structures upon the land, or changes in its surface, absolutely required by law, or in fact necessary to be made by the corporation injured, in order to accommodate its own land to the new condition. *Com. v. Boston & M. R. R.*, 3 Cush. 25, 53; *Old Colony R. R. Co. v Plymouth*, 14 Gray, 155; *Grand Junction R. R. Co. v. County Com'rs of Middlesex*, Id. 553. But it is not entitled to damages for the interruption and inconvenience occasioned to its business; nor for the increased liability to damages from accidents; nor for increased expense for ringing the bell; nor for the risk of being ordered by the county commissioners, when in their judgment the safety and convenience of the public may require it, to provide additional safeguards for travelers crossing its railroad. *Proprietors of Locks and Canals v. Nashua & L. R. R. Co.*, 10 Cush. 385, 392; *Boston & W. R. R. Co. v. Old Colony R. R. Co.*, 12 Cush. 605, 611; S. C. 3 Allen, 142, 146; *Old Colony R. R. Co. v. Plymouth*, 14 Gray, 155."

In Illinois the principle was laid down in the case of *Chicago & W. I. R. R. Co. v. Englewood Connecting Ry. Co.*, 115 Ill. 375 (S. C. 23 Amer. & Eng. R. R. Cas. 56), founded upon

the manifest fact that the value of a railroad property, outside of the advantages of location and amount of business it controls, consists in the strength, permanency, and durability of its structures, and its adaptability to and capacity for doing railroad business;—

"That, whenever the proposed condemnation and subsequent user will injuriously affect such a property in either of these respects, the injury thus occasioned will form a proper basis for the assessment of damages in a proceeding of this kind."

In this case the court on the trial excluded all evidence from the jury tending to show that either the value of the respondent's road, or its capacity to do the business of the company, would be impaired by the proposed crossing; and the court, upon a review of the authorities in that state, held that the court below erred. It had previously been held by that court that the law requiring trains to stop before reaching and crossing another road was a police regulation, and might be maintained or repealed at the pleasure of the legislature; that it would therefore be mere conjecture as to what, if any, damages would be sustained for the delay, inconvenience, and trouble produced by complying with the requirements of the statute; and that, independent of the statute, the same duty would be imposed, and that it was too vague and uncertain to be an element of damages. *Peoria & P. U. Ry. Co. v. Peoria & F. Ry. Co.*, 105 Ill. 110.

The point was more fully considered in an opinion filed at the same time with that above cited, and reported in the same volume, at page 388, in which a rehearing was denied at the March term, 1883, in which the majority of the court held that damages occasioned by the stopping of trains could not be considered in awarding compensation (*Chicago & A. R. R. Co. v. Joliet, L. & A. Ry. Co.*). These decisions have not been overruled in that state. Such is also the conclusion reached by the supreme court of Ohio. *Lake Shore & M. S. Ry Co. v. Cincinnati, S. & C. Ry. Co.*, 30 Ohio St. 604.

64 MICH.—25.

I think that the stopping of trains, whether required by the law as a police regulation, or by the duty of the company in order to secure the safety of persons transported, is not an element which can be considered by the jury in estimating the damages and compensation to be made.

The general railroad law requires trains to come to a full stop, before crossing the track of another railroad, not nearer than 200 nor more than 800 feet from the crossing. It regulates the precedence which trains shall have in crossing, and prescribes penalties for disobedience of the regulations.[1] These are police regulations enacted by the Legislature, designed to promote the public safety, and are as binding upon an existing road as one newly organized. They stand upon an equality before the law, and neither can levy tribute upon the other as a compensation for obedience to its requirements. It is subject to amendment or repeal at any time the Legislature may see fit; and for this reason, as well as for the absolute impossibility of determining in advance the number of trains which in the future operation of the road would be required to stop at such crossing, the damage arising therefrom is uncertain and conjectural. But, aside from this, any inconvenience or annoyance or loss suffered in obeying the police regulations of the sovereign authority is *damnum absque injuria.*

I do not agree with Mr. Justice Scott, in *Chicago & A. R. R. Co. v. Joliet, L. & A. Ry. Co. supra,* that, so far as the defendant would suffer injury on account of having to stop trains at the crossing for reasons other than the compliance with the statute, damages might be given. No stoppage would be required, independently of the statute, other than that which would arise from the duty of the company to operate its road in such manner as to avoid danger from collision at the crossing.

In the absence of the statute, the duty imposed by the cir-

[1] How. Stat. § 3376; amended by Act No. 174, Laws of 1883.

·cumstances upon the corporation to adopt and observe proper precautions to protect the lives of persons committing themselves to its care takes the force of law, and has its foundation in the same principles which underlie police regulations, namely, the protection and welfare of the public. In other words, the police regulation requiring trains to stop does not create a new duty, but compels the observance of an existing duty by the corporation. The statute or duty merely regulates the mode in which the corporation shall exercise its franchise. This incident to crossing takes no land, requires no structural change in the property, and deprives the corporation of no right granted by its charter. It does not lie within the scope of injuries for which compensation should be made.

The cost of maintaining signals or a crossing system would be a proper matter for the consideration of the commissioners, as well as cost of watchman. These expenses, however, are subject to contingencies which may cause the damages to fluctuate, and possibly be reduced to a nominal sum. The evidence bearing on all these contingencies was introduced before the commissioners.

It was shown that if the interlocking switch and signal system was put in, which, under our decision in the case of *Toledo, A. A. & N. M. Ry. Co. v. Detroit, L. & N. R. R. Co.*, ·62 Mich. 564, must be done entirely at the expense of the petitioning company, it would reduce the expense of maintaining to nearly a nominal sum, to be borne equally between the two roads; and, although it does not appear in the record before us that this was the system adopted by the petitioner, yet it was brought to our attention, upon the argument, that the crossing board had determined that the interlocking switch must be put in; and a stipulation was made in this Court, based upon the construction of such switch, not to disturb petitioner in its possession as a condition for hearing the cause in this Court.

In view of these facts, I cannot say that the damages awarded are so grossly inadequate as to warrant us in sending the inquisition back to the same or a new commission.

I think the objections not waived should be overruled, and the report of the commissioners, and the confirmation thereof, should be affirmed.

SHERWOOD and MORSE, JJ., concurred.

CAMPBELL, C. J. I have great doubts whether the judgment for damages is not very much too low; but I concur in the opinion that, upon the imperfect means of estimation, there is difficulty in disturbing it.