[No. 13464.  *En Banc.*  December 26, 1916.]

THE STATE OF WASHINGTON, *on the Relation of Puget Sound & Willapa Harbor Railway Company, Appellant,* v. NORTHERN PACIFIC RAILWAY COMPANY *et al.,* *Respondents.*[1]

RAILROADS—CROSSINGS—COST OF CONSTRUCTION AND MAINTENANCE —SAFETY DEVICES—APPORTIONMENT—STATUTES.  Rem. Code, § 8733-6, subd. c, providing that the portion of the expense of making a railroad crossing at grade not chargeable to a county or city shall be apportioned between the railroad companies, means not only the expense of constructing the actual crossing, but the expense of constructing and maintaining such protective devices mentioned in § 8733-3 as the public service commission may require.

SAME—CROSSINGS—COST OF SAFETY DEVICES.  In the absence of a statute to the contrary, a railroad desiring to cross another at grade must bear the expense of the crossing, including the cost of installing and maintaining such safety devices as the necessities of the case require.

SAME—CROSSINGS—SAFETY APPLIANCES—COSTS—APPORTIONMENT— DUE PROCESS.  The railroad company first in time takes its right subject to being crossed by the line of another railway; and hence it is within the power of the state to impose upon a railroad company whose line is crossed at grade by another line the duty of installing and maintaining such safety devices as the conditions require for the safety of the public, and Rem. Code, § 8733-6, subd. c, requiring an apportionment of the costs thereof between the railroad companies does not violate the constitutional inhibition against taking private property for public use without compensation.

SAME.  Under Rem. Code, § 8733-6, subd. c, providing that the portion of the expense of making a railroad crossing at grade not chargeable to a county or city shall be apportioned between the railroad companies, the public service commission cannot charge the entire cost against the road desiring the crossing, merely because the older company was first in point of time, where the record shows no equity in favor of one road over the other; since to require one road to bear all the expense is not an "apportionment."

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered April 17, 1916, affirming an order

[1] Reported in 161 Pac. 850.

of the public service commission, after a hearing before the court. Reversed.

*F. M. Dudley,* for appellant.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte,* for respondent Northern Pacific Railway Company.

*The Attorney General* and *Scott Z. Henderson, Assistant,* for respondent Public Service Commission.

FULLERTON, J.—The appellant, Puget Sound & Willapa Harbor Railway Company, in the construction of a line of railway through Lewis county, found it necessary to cross in two places the existing railway of the respondent Northern Pacific Railway Company. It desired to make the crossings at grade, and to that end petitioned the public service commission for leave so to do. A hearing was had on the petition, at which leave was granted to make the crossings as petitioned for, on condition that suitable interlocking devices be installed and maintained at the crossings. After the entry of the order granting the leave by the commission, the railway companies agreed upon the character of the device to be installed, but failed to agree on an apportionment of the expense for installing the same, the respondent refusing to bear any portion of the expense whatsoever. The appellant thereupon petitioned the public service commission to apportion such expense, and a hearing was had before that body upon this petition. At the conclusion of the hearing, the commission decided that the expense of installing the devices as well as their subsequent maintenance should be borne by the appellant company, and entered its order to that effect. The appellant caused the order to be reviewed in the superior court of Lewis county, where it was affirmed. This appeal is from the judgment of affirmance.

The provisions of the statute material to a consideration of the questions involved are found at §§ 8733-2, 8733-3, and

subdivision C. of § 8733-6 of Rem. Code, and are quoted in full:

"All railroads and extensions of railroads hereafter constructed shall cross existing railroads and highways by passing either over or under the same, when practicable, and shall in no instance cross any railroad or highway at grade without authority first being obtained from the commission to do so.  All highways and extensions of highways hereafter laid out and constructed shall cross existing railroads by passing either over or under the same, when practicable, and shall in no instance cross any railroad at grade without authority first being obtained from the commission to do so: Provided, that this section shall not be construed to prohibit a railroad company from constructing tracks at grade across other tracks owned or operated by it within established yard limits. In determining whether a separation of grades is practicable, the commission shall take into consideration the amount and character of travel on the railroad and on the highway; the grade and alignment of the railroad and the highway; the cost of separating grades; the topography of the country, and all other circumstances and conditions naturally involved in such an inquiry."  Id., § 8733-2.

"Whenever any railroad company desires to cross any highway or railroad at grade, it shall file a written petition with the commission setting forth the reasons why the crossing cannot be made either above or below grade, and whenever the county commissioners of any county, or the municipal authorities of any city or town, or the state officers authorized to lay out and construct state roads, desire to lay out or extend any highway across any railroad at grade, they shall file a written petition with the commission, setting forth the reasons why the crossing cannot be made either above or below grade.  Upon receiving such petition the commission shall immediately investigate the same, giving at least ten days' notice to the railroad company or companies and the county or municipality affected thereby, of the time and place of such investigation, to the end that all parties interested may be present and be heard.  If the highway involved is a state road, the state highway commissioner shall be notified of the time and place of hearing.  The evidence introduced shall be reduced to writing and be filed by the commission. If the commission finds that it is not practicable to cross the

railroad or highway either above or below grade, it shall make and file a written order in the cause, granting the right and privilege to construct a grade crossing. The commission, in its discretion, may provide in the order authorizing the construction of a grade crossing, or at any subsequent time, that the railroad company shall install and maintain proper signals, warnings, flagmen, interlocking devices, or other devices or means to secure the safety of the public and its employees. If upon investigation the commission shall find that it is impracticable to construct an over-crossing or under-crossing on the established or proposed highway, and shall find that by deflecting the established or proposed highway a practicable and feasible over-crossing or under-crossing or a safer grade crossing can be provided, it shall continue the hearing on the petition and hold a supplemental hearing thereon. At least ten days' notice of the time and place of such supplemental hearing shall be given to all land owners that may be affected by the proposed change in location of the highway. At such supplemental hearing the commission shall inquire into the propriety, advisability and necessity of changing and deflecting the highway as proposed for the purpose of securing an over-crossing, under-crossing, or safer grade crossing. If the proposed change in route of the highway involves the abandonment and vacation of a portion of an established highway, the owners of land contiguous to the portion of the highway to be vacated and abandoned shall, in like manner, be notified of the time and place of the supplemental hearing. At the conclusion of the hearing on the petition, the commission shall make and file its findings of fact in writing concerning the matters inquired into, and shall determine the location of the crossing which may be constructed, and whether the same shall be an under-crossing, over-crossing, or grade crossing, and shall determine whether or not any proposed change in the route of an existing highway, or the abandonment of a portion thereof is advisable or necessary to secure an over-crossing, under-crossing, or safer grade crossing. If the commission shall find and determine that a change in route of an existing highway, or abandonment and vacation of a portion thereof is necessary or advisable, it shall further find and determine what private lands, property, or property rights, if any, it is necessary to take, damage, or injuriously affect, for the purpose of laying out

and constructing the highway along a new route, and what private lands, property or property rights, if any, will be affected by the proposed abandonment and vacation of a portion of an existing highway. The lands, property, and property rights found necessary to be taken, damaged, or affected shall be described in said findings with reasonable accuracy, and the right to take, damage or injuriously affect the same shall be acquired as hereinafter provided. In any action brought to acquire the right to take, damage, or injuriously affect any such lands, property, or property rights, the findings of the commission shall be conclusive as to the necessity for taking, damaging, or injuriously affecting the same. A copy of said findings shall be served upon all parties to the cause." Id., § 8733-3.

"Whenever two or more lines of railroad owned or operated by different companies cross a highway, or each other, by an over-crossing, under-crossing or grade crossing required or permitted by this act or by an order of the commission, the portion of the expense of making such crossing not chargeable to any municipality, county, or to the state, shall be apportioned between said railroad companies by the commission unless said companies shall mutually agree upon an apportionment. If it becomes necessary for the commission to make an apportionment between the railroad companies, a hearing for that purpose shall be held, at least ten days' notice of which shall be given." Id., § 8733-6 c.

It is the contention of the appellant that these statutes require an apportionment of the expense of installing and maintaining such crossing devices as the commission may require to be installed for the protection of the public, and hence that the order of the commission in this instance, since it required the appellant to bear the whole expense of installing and maintaining the interlocking device required by its order, is in violation of the statute, and is otherwise unjust and inequitable. On the other hand, it is contended by respondent that the statute, properly construed, relates only to the expense of the actual crossing, of which an interlocking device is not a necessary part; and further, that to construe the statute in such a way as to compel the senior road to pay

any part of the expense of constructing a crossing, or the devices required to be installed in connection therewith, is to render the statute unconstitutional, since it is to permit a taking of the property of the senior road for the benefit of the junior without any corresponding benefit, and hence a taking without compensation.

Noticing first the question of construction, it must be confessed that the statute is not entirely clear as to its meaning. The language used, giving it a literal construction, seems to support the respondent's contention. It will be noticed that § 8733-3 appears to refer to the interlocking and other devices which the public service commission may in its discretion require to be installed by "the railroad company" for the protection of the public, as something in addition to the actual construction of the crossing, while subdivision c. of § 8733-6 makes no reference to these devices, but refers to the "expense of making such crossing" only. The railroad company named in the first section must, from the context, refer to the railroad company desiring to make the crossing, not to the railroad company whose tracks are crossed; and the requirement that it shall install and maintain the protective devices means, in the absence of explanatory words, that it shall install and maintain them at its own expense. But to construe the language thus literally seems to conflict with the spirit and intent of the act, and we think that the later section, in its reference to the expense of the crossing, means not only the expense of constructing the actual crossing, but the expense of constructing and maintaining such protective devices as the commission may require to be constructed and maintained therewith. The expense of constructing and maintaining the actual crossing is, the record shows, but nominal when compared with the cost of installing and maintaining the protective devices. It is, moreover, wholly for the benefit of the crossing road, while the protective devices can be said to be for the benefit of both roads, since they lessen the danger of accidents and permit a more economical oper-

ation of both.   It is not, therefore, to be supposed that the legislature, in providing for an apportionment of the expense, referred to this lesser consideration to the exclusion of the one of so much greater importance, and we cannot so hold. "The real meaning of a statute is to be ascertained and declared, even though it seems to conflict with the words of the statute." *Landers v. Smith,* 78 Me. 212, 3 Atl. 463; *Orono v. Bangor R. & Elec. Co.,* 105 Me. 428, 74 Atl. 1022; *Minneapolis & St. L. R. Co. v. Gowrie & N. W. R. Co.,* 123 Iowa 543, 99 N. W. 181.

Passing to the constitutional question, it must be remembered when considering it that the appellant does not seek to have the expense of constructing the crossing proper apportioned between itself and respondent, but seeks only to have so apportioned the expense of installing and maintaining the interlocking device required by the public service commission.   It must be remembered, also, that an interlocking device is no part of the crossing proper.   Crossings at grade existed long prior to the invention of such devices, and many grade crossings now exist and are in use in this state where no such device is installed.   The device is a safety device, having for its primary purpose the protection of the public from accident, and a secondary purpose of enabling the crossing roads to operate their trains more economically, in that it does away with the necessity of stopping before crossing the opposing track other than when signaled so to do.   Rem. Code, § 8626-69.

The right of one railroad company to construct its tracks across the tracks of another company, while guaranteed by the constitution and statutes of this state, exists without such guaranty.   The right to cross could be condemned in the same manner the right to cross other property was condemned.   The great weight of authority is, however, in the absence of a statute to the contrary, to the effect that the crossing company must bear the expense of the crossing. This includes not only the cost of constructing the grades and

laying the tracks, but the cost of installing and maintaining such safety devices as the necessities of the particular case might require. *Toledo, A. A. & N. M. R. Co. v. Detroit, L. & N. R. Co.*, 62 Mich. 564, 29 N. W. 500, 4 Am. St. 875; *State ex rel. Minneapolis v. St. Paul, M. & M. R. Co.*, 98 Minn. 380, 108 N. W. 261, 120 Am. St. 581, 28 L. R. A. (N. S.) 298; *Chicago, M. & St. P. R. Co. v. Milwaukee*, 97 Wis. 418, 72 N. W. 1118; *State ex rel. Northern Pac. R. Co. v. Railroad Commission of Wisconsin*, 140 Wis. 145, 121 N. W. 919; *Flint & P. M. R. Co. v. Detroit & B. C. R. Co.*, 64 Mich. 350, 31 N. W. 281; *Butte, A. & P. R. Co. v. Montana U. R. Co.*, 16 Mont. 504, 41 Pac. 232, 50 Am. St. 508, 31 L. R. A. 298; *West Jersey & S. R. Co. v. Atlantic City & S. Traction Co.*, 65 N. J. Eq. 613, 56 Atl. 890; *Winona & S. W. R. Co. v. Chicago, Milwaukee & St. Paul R. Co.*, 50 Minn. 300, 52 N. W. 657; *Elkins Elec. R. Co. v. Western Maryland R. Co.*, 163 Fed. 724; *Chicago & W. I. R. Co. v. Englewood Conn. R. Co.*, 115 Ill. 375, 4 N. E. 246, 56 Am. Rep. 173.

In our own case of *State ex rel. North Coast R. v. Northern Pac. R. Co.*, 49 Wash. 78, 94 Pac. 907, a proceeding brought by the relator to cross the track of the defendant at grade, we held it to be the duty of the relator to bear the expense of making and maintaining the crossing, as well as an interlocking device found necessary to be installed for protective purposes. Announcing the same principle, although presenting different states of facts, are the cases: *State ex rel. Union Lumber Co. v. Superior Court*, 70 Wash. 540, 127 Pac. 109; *Northern Pac. R. Co. v. Union Lumber Co.*, 76 Wash. 563, 137 Pac. 306; *Spokane v. Spokane & Inland Empire R. Co.*, 75 Wash. 651, 135 Pac. 636. The grounds upon which the principle was rested in some of these cases lend strong color to the contention of the respondent, but it must be remembered that the cases were determined in the absence of statutes requiring an apportionment of costs and without that thought being in the mind of the court when the opinions were framed. The

language of the court must be construed with reference to the question actually before it, and since the question now before us was not presented in any of them, they cannot be said to be conclusive of it.

A railroad company which has procured a right of way for its line and laid tracks thereover clearly has a vested property right therein, and any other company crossing such right of way is bound to make compensation for the property actually taken and damaged, regardless of any statutory provision to the contrary. But a railway company first in time acquires no exclusive right to the territory through which it passes or exclusive right to operate its road in any particular manner. Both under the principles of the common law and by the express provisions of the constitution and statutes of this state, its line was subject to being crossed by the line of another railroad company. The language of the supreme court of the United States, in *Chicago, B. & Q. R. Co. v. Chicago*, 166 U. S. 226, is applicable. It is there said:

"The plaintiff in error took its charter subject to the power of the state to provide for the safety of the public, in so far as the safety of the lives and persons of the people were involved in the operation of the railroad. The company laid its tracks subject to the condition necessarily implied that their use could be so regulated by competent authority as to insure the public safety. And as all property, whether owned by private persons or by corporations, is held subject to the authority of the state to regulate its use in such manner as not to unnecessarily endanger the lives and the personal safety of the people, it is not a condition of the exercise of that authority that the state shall indemnify the owners of property for the damage or injury resulting from its exercise. Property thus damaged or injured is not, within the meaning of the constitution, taken for public use, nor is the owner deprived of it without due process of law. The requirement that compensation be made for private property taken for public use imposes no restriction upon the inherent power of the state by reasonable

regulations to protect the lives and secure the safety of the people. In the recent case of *N. Y. & N. E. Railroad v. Bristol*, 151 U. S. 556, 567, this court declared it to be thoroughly established that the inhibitions of the constitution of the United States upon the impairment of the obligation of contracts, or the deprivation of property without due process or of the equal protection of the laws, by the states, are not violated by the legitimate exercise of legislative power in securing the public safety, health and morals. 'The governmental power of self-protection,' the court said, 'cannot be contracted away, nor can the exercise of rights granted, nor the use of property be withdrawn from the implied liability to governmental regulation in particulars essential to the preservation of the community from injury.' See *New Orleans Gas Co. v. Louisiana Light Co.*, 115 U. S. 650, 671."·

It is, therefore, within the power of the state, whenever it deems the public safety may so require, to impose upon railway companies whose tracks cross each other at grade the duty of installing and maintaining at such crossing such safety devices as the conditions may require. And since such devices are not necessary to the successful operation of the road but are required for the safety of the public, it would seem to follow that the state might provide, without violating the constitutional inhibition against the taking of private property for a public use, that the expense of installing and maintaining such devices could be apportioned between two railway companies, even though the installation is required to be made at the time when the one is constructing a new track across the existing track of another. We so hold, and while we think the rule applicable to any form of safety device, we think it particularly applicable to the one in question, since it has, as we say, the double purpose of protecting the public and enabling each of the roads to more economically operate its trains.

It follows from this that the public service commission and the trial court were in error in imposing the entire obligation of installing and maintaining the required interlocking de-

vice upon the appellant, unless it can be said that the power to apportion the expense between the companies includes the power to impose it all upon one of the companies. In *Toledo R. & Terminal Co. v. Lima & Toledo Traction Co.*, 79 Ohio St. 136, 86 N. E. 515, the court held that an apportionment of the costs did not necessarily mean an equal apportionment and, in a subsequent appeal of the same case, said that to require one company to bear all of the expense was not an apportionment, the true rule appearing to be that a substantial apportionment is required.

So interpreting the statute, we cannot conclude in this instance that the order of the commission can stand. The record shows no equity in favor of the one road over the other. The order was based entirely on the fact that one was first in time, and since we conclude that this is not sufficient under the statute to relieve it from a share of the expense, it follows that the burden of installing and maintaining the interlocking device should be divided equally between the companies.

The judgment appealed from is reversed, and the cause remanded with instructions to direct the public service commission to apportion the expense of installing and maintaining the interlocking device mentioned equally between the railroad companies interested.

MOUNT, MAIN, ELLIS, PARKER, and CHADWICK, JJ., concur.

HOLCOMB, J. (concurring)—I concur in the result, assuming that the public service commission will apportion the cost as suggested in *Toledo R. & Terminal Co. v. Lima & Toledo Traction Co.*, 79 Ohio St. 136, 86 N. E. 515. I do not agree that the railroad first occupying a right of way has no superior right or equity as against a subsequent occupier of the right of way for the purpose of crossing. As against it, I think the first occupier has a very superior position and right. As against the sovereign, of course, it has

not, but in apportioning the costs involved here, the superior and prior position of the first occupier should be given very great advantage.