[No. 14781.  Department Two.  December 9, 1918.]

THE STATE OF WASHINGTON, *on the Relation of Tacoma Eastern Railroad Company, Appellant,* v. NORTHERN PACIFIC RAILWAY COMPANY *et al., Respondents.*[1]

RAILROADS (29)—CONSTRUCTION — CROSSINGS — APPORTIONMENT OF COSTS.  In apportioning the costs of interlocking devices to be maintained at a grade crossing, the public service commission should not be governed by the priority of the pioneer road, nor by the character of the service or construction by the crossing road; but is to exercise its discretion on the resulting convenience and inconvenience.

SAME (29).  In the absence of abuse or arbitrary action, the courts will not review the discretion of the public service commission in apportioning the cost of interlocking devices; and no abuse appears in apportioning two-thirds of the cost to the petitioner seeking to cross a main line road by its branch line, to serve Camp Lewis on request of the government; considering the greater number of trains run on the main line, and the fact that the branch line was for the benefit of territory devoted to a particular use.

Appeal from an order of the superior court for Pierce county, Chapman, J., entered January 19, 1918, affirming an order of the public service commission, after a hearing before the court.  Affirmed.

[1]Reported in 176 Pac. 539.

*F. M. Dudley,* for petitioner, upon the question of the proper apportionment of the cost of the interlocking device, cited: *Grand Trunk Western R. Co. v. Railroad Commission of Indiana,* 40 Ind. App. 168, 81 N. E. 524; *Wabash R. Co. v. Commissioner of Railroads,* 120 Mich. 697, 79 N. W. 910; *Detroit, Ft. W. & B. I. R. Co. v. Commissioner of Railroads,* 127 Mich. 219, 86 N. W. 842, 62 L. R. A. 149; (Affirmed in 189 U. S. 383); *Louisville & N. R. Co. v. New Orleans Terminal Co.,* 120 La. 978, 45 South. 962; *Lima & Toledo Traction Co. v. Toledo R. & Terminal Co.,* 30 Ohio Cir. Ct. Rep. 355; *Toledo R. & Terminal Co. v. Lima & Toledo Traction Co.,* 79 Ohio St. 136, 86 N. E. 515; *Cincinnati Northern Traction Co. v. Pittsburgh C. C. & St. L. R. Co.,* 79 Ohio St. 243, 86 N. E. 987; *Railroad & Warehouse Commission v. Litchfield & M. R. Co.,* 267 Ill. 337, 108 N. E. 347; *State Public Utilities Commission v. Illinois Cent. R. Co.,* 274 Ill. 36, 113 N. E. 162; *State ex rel. Puget Sound & Willapa Harbor R. Co. v. Northern Pac. R. Co.,* 94 Wash. 10, 161 Pac. 850.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte,* for respondent Northern Pacific Railway Company.

CHADWICK, J.—This proceeding is brought to review an order of the public service commission fixing the duties and obligations of the petitioner and the respondent with reference to the installation and maintenance of an interlocking device at a grade crossing near the town of Roy. Petitioner is a subsidiary of the Chicago, Milwaukee & St. Paul Railway Company, which, like the respondent, is a transcontinental railway.

The respondent is the senior company and has, for more than forty years, maintained and operated, as part of its main line, its tracks running between Taco-

ma, in this state, and Portland, in the state of Oregon. It serves the army cantonment at Camp Lewis by a branch line which leaves the main line at the station of Lakeview, a few miles north of Roy. By agreement, the Great Northern Railway operates its trains over the tracks of the respondent company and likewise serves the cantonment.

At some time subsequent to the establishment of the cantonment, the war department invited the petitioner to extend a branch line into the camp. To do this it was necessary to cross the main line of the respondent company. The matter coming on formally before the commission upon the petition of the petitioner to install a grade crossing, that body found, *inter alia,* that a necessity existed for the construction of the branch line into the army post "in order that large bodies of troops might be moved at one time;" that it was impracticable to cross the tracks of respondent's railway either above or below grade; that the track to be constructed would be used for the purpose of serving the army post; that petitioner would operate two trains each way daily, and that respondent would operate four passenger trains and two freight trains each way daily; that the installation of and maintenance of an interlocking device was necessary for the protection of the traveling public, the railroad companies and their employees.

"That the petitioner and respondent are unable to agree upon an apportionment of the cost of installation and maintenance of said interlocking plant.

"That the cost of the grade preparation, the cost of the frogs, and the preparation for and installation of the frogs should be borne entirely by the Tacoma Eastern Railway Company.

"That the cost of installation of a proper interlocking plant will approximate $12,000, and that the same should be so installed that the trains of the Northern

Pacific Railway Company shall have priority and right of way over said crossing over the trains of the Tacoma Eastern Railway Company. The Tacoma Eastern Railway Company to operate the interlocking plant in such manner as to warn the approaching trains of the Northern Pacific Railway Company of the condition of the crossing when used by the trains of the Tacoma Eastern Railway Company; and that the cost of and installation of said interlocking plant should be borne, one-third thereof by the Northern Pacific Railway Company, and two-thirds thereof by the Tacoma Eastern Railway Company, and all maintenance thereof should be borne in like proportions by such companies."

Whereupon the commission made and entered the following order:

"We have investigated the statute relative to the apportionment of costs and also the opinion of our supreme court in the case of *State ex rel. Puget Sound & Willapa Harbor Railway Company v. Public Service Commission of Washington,* 94 Wash. 10 [161 Pac. 850]. There appears little, if anything, in either the law or the opinion of the supreme court to guide us in apportioning the cost. We have, however, based it upon such reasoning as would appeal to us in granting or withholding a certificate of necessity, had we jurisdiction over such matters. Under our statute, in apportioning costs we would be loath to burden the pioneer company with any considerable part of the expense of making a crossing or protection thereof, where the new company was only seeking to serve an industry already being served by the pioneer company. In cases, however, where the new road will serve a large district not served by the pioneer road or only partially served by the latter, then, in that event, there should be a substantial portion of the cost of the crossing and its protection borne by the pioneer company. In every event, before a crossing should be granted, a necessity should exist therefor. This necessity may be of high or low degree, depending upon the purpose

to be accomplished by the road seeking the crossing. In other words, the merit of the new road's purpose may be inquired into, and its magnitude. In the case at bar, the government has 'asked the Tacoma Eastern Railway Company, which is a subsidiary of the Chicago, Milwaukee & St. Paul Railway Company, to build to the army post. We cannot question the wisdom of the government in making this request. We must presume it is highly meritorious and that the Milwaukee system is warranted in seeking to comply with the wishes of the government. The army post, however, is now served by three other roads operating over roadbeds and rails of very costly construction, while the Tacoma Eastern Railway Company will build into the army post on a cheap roadbed and with light rails.

"Wherefore it is ordered; That the Tacoma Eastern Railroad Company be and is hereby permitted to construct and maintain its railway line at grade over and across the track of the Northern Pacific Railway Company at the location referred to in Finding III herein, and that said crossing be protected by what is known as the 'Cabin device of interlocking plant.'

"That the cost of the grade preparation, the cost of the frogs and the preparation for and the installation of the frogs shall be borne entirely by the Tacoma Eastern Railway Company. That the cost of said interlocking plant and the installation thereof shall be borne, one-third thereof by the Northern Pacific Railway Company, and two-thirds thereof by the Tacoma Eastern Railway Company, and that all maintenance thereof and of the frogs shall be borne in like proportions by said two companies. That said Tacoma Eastern Railway Company shall operate said interlocking plant in such manner as to warn the approaching trains of the Northern Pacific Railway Company of the condition of the crossing when used by the trains of the Tacoma Eastern Railway Company. That the trains of the Northern Pacific Railway Company shall have priority and right of way over the trains of the Tacoma Eastern Railway Company at such crossing."

Petitioner complains that the commission gave controlling weight to the following factors:

"(a)  Priority of construction, they being clearly of the opinion that the existing road possessed an equity which should receive consideration in apportioning the costs growing out of the mere fact that it was the prior constructed road.

"(b)  The nature of the public service which it was contemplated the junior road would perform.

"(c)  The degree of public benefit involved in the construction of the junior road; and held in that connection that the commission would properly inquire into and consider the merit and magnitude of the new road's purpose.

"(d)  The costliness of the new road.

"And no consideration or weight whatever to the purposes of the interlocker or its comparative benefit to the respective parties."

We grant the merit of much that is said by counsel, for the necessity being found, there can be no favor shown the company whose line is crossed merely because it is a pioneer company. Railroads are built to serve the public, and are granted privileges not accorded to private citizens or private enterprises. They are subject to public control, and the maxim "first in time is first in right" can have no binding application in determining their affairs, or in fixing their relative rights and liabilities. The suggestion that the cantonment is already adequately served is contrary to the conclusion of the commission that a crossing is necessary, and does violence to the underlying motive of this proceeding, which is the request of the war department. That a railway company is entitled to a monopoly of territory or traffic because of discovery or prior occupation is inconsistent with modern thought and opinion and the right of those who depend upon them as quasi public agencies. When a

petition is filed for permission to cross an existing road, there are three parties in interest, the two companies and the state; the latter having power to grant or refuse the petition. If it grants the right to cross, all questions of prior right or occupancy of the ground must give way, for the order is a finding by the sovereign state that the need of the public demands two roads instead of one, and the order *ipso facto* forecloses all questions of seniority or priority between the contending roads. This is the logic of *State ex rel. Puget Sound & Willapa Harbor R. Co. v. Northern Pac. R. Co.*, 94 Wash. 10, 161 Pac. 850, where we said

". . . a railway company first in time acquires no exclusive right to the territory through which it passes or exclusive right to operate its road in any particular manner. Both under the principles of the common law and by the express provisions of the constitution and statutes of this state, its line was subject to being crossed by the line of another railroad company,"

and we there held that it was within the power of the legislature to provide, contrary to the holdings of the court formerly pronounced, that the cost of a crossing and interlocking devices should be apportioned between the two companies.

Neither do we agree with the finding of the commission that the character of the service to be rendered by the crossing road is a thing, in and of itself, to be considered, or that the character of construction is in any sense a proper thing to be considered in apportioning the costs of construction and maintenance. But the legislature, acting within its admitted province, provided that the costs shall be apportioned. It no doubt had in mind the resulting convenience and inconvenience, for both must of necessity result to the

operating roads, as well as the difficulty of making an exact formula for the distribution of the costs. Considering the number of trains operated by either company; that the line of respondent is, in a sense, a main line operating between terminals of commercial importance; that petitioner selected the place of crossing to suit its best convenience, and that petitioner's line is a branch line and to be operated as it were into and for the benefit of property or territory devoted to a particular use, and the inability of the commission, as well as the courts, to fix to a mathematical certainty the portion of the costs to be borne by the parties, we feel compelled, as did the trial court, to fall back upon the discretion of the commission, and being unable to say that it has abused that discretion, direct that its order be affirmed.

It seems that this result must follow, unless the theory of counsel that, the crossing being ordered and installed, the maintenance of the interlocking device, because of the greater number of trains operated by respondent, will result in a greater benefit to it than to the petitioner. He contends, and it is no doubt true, that, if the commission had ordered a grade crossing without interlocking device, the cost of operation would have been much greater than it will be with that device installed. He reasons that, the cost of stopping each train being $1.57, the daily cost to respondent would be $9.42, or $3,438.30 for the year; that the interlocking device operates as a direct saving of this amount, while the petitioner, upon whom the burden of operation is placed, and against whom the device is set, must make a stop at either side of the crossing, one to release the interlocker, and, after passing, to set it again.

These arguments are engaging and, in the abstract,

are hard to meet, but there are considerations, such as time, which are of greater importance to a main line road than to one operating a branch line. So, too, the number of trains operated may well be a subject of constant change, and a present condition is not to be taken arbitrarily as determinative of the rights of the parties.

Wherefore, unless we can say that the order of the commission is wrong in the sense that its discretion has been arbitrarily exercised, we must, under well settled rules, say that it is not to be overcome by judicial decree. To do so would be but to substitute our own will for that of the commission, and in so doing we would in all probability trench upon some equities while declaring others. Being unable to say that we can render a better judgment than that rendered by the commission, and sustained on appeal by the lower court, we shall direct that the order be affirmed.

MAIN, C. J., MOUNT, MACKINTOSH, and HOLCOMB, JJ., concur.