[No. 6814. Decided March 28, 1908.]

THE STATE OF WASHINGTON, *on the Relation of North Coast Railway, Plaintiff*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Respondent*.[1]

EMINENT DOMAIN—RAILROADS—CROSSINGS—CONDITIONS — COST OF MAINTENANCE. In condemning the right to cross at grade the right of way of a prior railroad company, it is proper to charge to the petitioner the cost of installing and maintaining a necessary interlocking device as to the tracks already in operation, or to be constructed within a reasonable time by the prior company to accommodate business already accumulated; but it is error to cover any or all tracks that the prior company might construct at that point in the future, or to confine the petitioner to a single track, as future contingencies should be left to future determination.

. Certiorari to review a judgment of the superior court for Yakima county, Rigg, J., entered May 24, 1907, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in condemnation proceedings, granting to a railway company the right to establish a crossing over the right of way belonging to another company. Modified.

*H. J. Snively* and *Danson & Williams* (*Fred H. Moore*, of counsel), for relator, contended that, a railroad is a *quasi-*

[1]Reported in 94 Pac. 907.

public corporation, or a corporation affected with a public interest.  *Township of Pine Grove v. Talcott*, 86 U. S. 666, 22 L. Ed. 227 ; *Olcott v. Supervisors*, 83 U. S. 678, 21 L. Ed. 382 ; *McCoy v. Cincinnati, St. Louis etc. R. Co.*, 13 Fed. 3 ; *Leavenworth County Com'rs v. Miller*, 7 Kan. 479, 12 Am. Rep. 425 ; *Stewart v. Erie & Western Transp. Co.*, 17 Minn. 372 ; *People v. New York Cent. etc. R. Co.*, 28 Hun. 543. The acceptance of the charter implies that the corporation assumes certain public obligations and takes its charter subject to the servitude of them.  *People v. New York etc. R. Co.*, 28 Hun. 308; *Abbott v. Johnstown etc. R. Co.*, 80 N. Y. 27, 36 Am. Rep. 572; *Seattle & M. R. Co. v. State*, 7 Wash. 150, 34 Pac. 551, 38 Am. St. 866, 22 L. R. A. 217 ; *Lake Shore etc. R. Co. v. Cincinnati etc. R. Co.*, 30 Ohio St. 604. These obligations must be performed, even if at financial loss.  *People v. New York Cent. etc. R. Co., supra; Atlantic Coast Line R. Co. v. North Carolina Corporation Commission*, 206 U. S. 1, 27 Sup. Ct. 585, 51 L. Ed. 933 ; *Wisconsin etc. R. Co. v. Jacobson*, 179 U. S. 287, 21 Sup. Ct. 115, 45 L. Ed. 194 ; *People ex rel. Green v. Dutchess etc. R. Co.*, 58 N. Y. 152. The interest of a railroad in its right of way is not unqualified ; it is in the nature of a right of user or easement for the public benefit.  *Lake Shore etc. R. Co. v. Cincinnati etc. R. Co., supra; Boston & Albany R. Co. v. Greenbush*, 5 Lansing (N. Y.) 461 ; *Albany Northern R. Co. v. Brownell*, 24 N. Y. 345 ; *Toledo etc. R. Co. v. Deacon*, 63 Ill. 91 ;*New York etc. R. Co. v. Bristol*, 151 U. S. 556, 14 Sup. Ct. 437, 38 L. Ed. 269 ; *Lake Shore etc. R. Co. v. Ohio*, 173 U. S. 285, 19 Sup. Ct. 465, 43 L. Ed. 702 ; *Wisconsin etc. R. Co. v. Jacobson*, 179 U. S. 287, 21 Sup. Ct. 115, 45 L. Ed. 194. In the exercise of its power the state may compel a railroad to fence its right of way.  *Missouri Pac. R. Co. v. Humes*, 115 U. S. 512, 6 Sup. Ct. 110, 29 L. Ed. 463 ; *Minneapolis etc. R. Co. v. Beckwith*, 129 U. S. 26, 9 Sup. Ct. 207, 32 L. Ed. 585. Or to abandon its grade crossings.  *State v.*

*Missouri Pac. R. Co.,* 33 Kan. 176, 5 Pac. 772; *New York etc. R. Co. v. Bristol, supra; Wabash R. Co. v. Defiance,* 167 U. S. 88, 17 Sup. Ct. 748, 42 L. Ed. 87; *Chicago etc. R. Co. v. Nebraska,* 170 U. S. 57, 18 Sup. Ct. 513, 42 L. Ed. 948. Or so grade its track as to make crossings convenient and useful. *People ex rel. Green v. Dutchess etc. R. Co., supra; People v. New York Cent. etc. R. Co.,* 74 N. Y. 302; *Indianapolis etc. R. Co. v. State ex rel. Lawrenceburg,* 37 Ind. 489. Or install new and additional safety devices at any time the public safety demands it. *Detroit etc. R. Co. v. Osborn,* 127 Mich. 219, 86 N. W. 842, 62 L. R. A. 149; affirmed in 189 U. S. 383, 23 Sup. Ct. 540, 47 L. Ed. 860; *Lake Shore etc. R. Co. v. Cincinnati etc. R. Co., supra.* Where a junior crosses a senior road the cost of maintaining and operating the necessary safety devices is to be borne equally by the two roads. *Seattle & M. R. Co. v. State, supra; Kansas City S. B. R. Co. v. Kansas City, St. Louis etc. R. Co.,* 118 Mo. 599, 24 S. W. 478; *Chicago & Alton R. Co. v. Joliet etc. R. Co.,* 105 Ill. 388, 44 Am. Rep. 799; *Flint etc. R. Co. v. Detroit etc. R. Co.,* 64 Mich. 350, 31 N. W. 281; *Massachusetts Cent. R. Co. v. Boston etc. R. Co.,* 121 Mass. 124. The mere fact of prior location does not give one road, as against another, seeking to condemn a crossing, a superior right. *Colorado etc. R. Co. v. Union Pac. R. Co.,* 41 Fed. 293; *Seattle & M. R. Co. v. State, supra.* When the junior road has paid the expense of installing the safety devices and restored the road to a condition where it can be safely operated, there can be no recovery for losses necessarily incidental to the crossing itself. *Boston etc. R. Co. v. Old Colony etc. R. Co.,* 3 Allen 142; *Massachusetts Cent. R. Co. v. Boston etc. R. Co.; Lake Shore etc. R. Co. v. Cincinnati etc. R. Co.,* and *Flint etc. R. Co. v. Detroit R. Co., supra; St. Louis Transfer R. Co. v. St. Louis, Merchants' Bridge Terminal R. Co.,* 111 Mo. 666, 20 S. W. 319; *Kansas City S. B. R. Co. v. Kansas City, St. Louis etc. R. Co., supra; Peoria & Pekin Union R. Co. v.*

*Peoria & Farmington R. Co.*, 105 Ill. 110; *Chicago & Alton
R. Co. v. Joliet etc. R. Co., supra; Chicago & N. W. R. Co.
v. Chicago & P. R. Co.*, Fed. Cas. No. 2,665. Legislative
rules requiring the senior road to bear one-half the expense
of operating crossings are but declaratory of the common
law. *Minneapolis & St. Louis R. Co. v. Gowrie & N. W. R.
Co.*, 123 Iowa 543, 99 N. W. 181; *Kansas City S. B. R. Co.
v. Kansas City, St. Louis etc. R. Co., supra.*

*Ira P. Englehart* and *B. S. Grosscup*, for respondent.

FULLERTON, J.—The relator is a railroad company, au-
thorized by its charter to construct, operate and maintain rail-
roads in this state and elsewhere, particularly from the city of
Walla Walla to the city of Seattle by way of the Yakima
Valley. In the construction of its road it found it necessary
to cross the right of way and track of the Northern Pacific
Railway Company at a point in Yakima county, and being
unable to agree with that company as to the place and manner
of crossing, brought condemnation proceedings in the court
of that county to acquire the right so to cross. The trial
court entered a decree granting the right, but annexed terms
and conditions thereto which the relator conceived not to be
in accordance with its rights in the premises, and it brought
the proceedings into this court by a writ of review.

The evidence introduced at the hearing in the trial court
is not in the record, and we are controlled as to the facts by
the findings of the trial judge. Those material to the ques-
tions presented are, in substance, these:

"That the said claimant, Northern Pacific Railway Com-
pany, has occupied the point where petitioner seeks to cross
said railroad by a line of railroad for many years; that the
point where petitioner seeks to cross the railroad track of said
Northern Pacific Railway Company is in a level section of
the country, and that said point is suitable for a grade cross-
ing, the surrounding country for about two miles north of
Parker Siding, and for several miles south thereof being a

comparatively level prairie; that a grade crossing of the two railroads is the natural crossing; that to require the two railroads to cross at separate grades it would be necessary for the petitioner to construct an artificial fill or embankment extending from a point about two miles south of Parker Siding to a point about two miles north thereof; said fill or embankment ranging in height from zero where the grade starts at each end to about 25 feet at the point of crossing, thus causing what is known as an adverse grade; that if such an embankment were constructed on petitioner's line it would be practically impossible for petitioner to maintain a station either at Parker Siding or between Parker Siding and Union Gap, or any place between Parker Siding and a point two miles south of said siding; that such an embankment would greatly inconvenience petitioner if it should desire to extend a branch over any place on the reservation lying west of said siding.

"That if the two railroads cross at the same grade by installing and operating a suitable and proper interlocking and derailing device, the dangers of accidents, so far as the crossing is concerned, is very slight; that with such a device it is necessary for a train on one road to stop only when the crossing is being used by a train on the other road; that there are standard devices of this character in general use at crossings of this character; that it is necessary and proper that a standard interlocking device should be installed at such crossing for the safety of the public and the safe operation of the trains on both roads.

"That the cost of installing an interlocking plant at this point will be about $7,500; that the annual cost of operating and maintaining said interlocking plant will amount to 5 per cent upon the sum of $75,000, from which the court finds that the value to the petitioner of constructing its roads so as to separate the grades of the two roads would be the sum of $75,000, excluding the contingent and uncertain elements of damage, including danger and delay of operation.

"That it would cost, to separate the grades at this point between the sum of $175,000 and the sum of $200,000.

"That the claimant, Northern Pacific Railway Company, has offered in open court, by due authority, to pay one-half of said cost over and above the sum of $75,000 in order to avoid the dangers and delays incident to any grade crossing.

"That the claimant, Northern Pacific Railway Company, acquired its right of way and constructed its road at the point of the proposed crossing prior to the year 1885, and now has the *bona fide* intention, within the near future, of double tracking its line of railroad at the point of the proposed crossing, and that such double tracking is a necessity. The claimant, Northern Pacific Railway Company, at said point, by reason of prior location and plan of increasing its trackage, has the prior right at said point, and should be permitted to construct without hindrance, additional tracks. A grade crossing at said point without the protection of the standard interlocking plant would involve great danger to persons and property, and the situation is such that it will not be permitted."

As conclusions of law from the foregoing facts the court held that the relator was entitled to cross the defendant's track at grade; that an interlocking device was necessary and should be installed; that the relator should be charged not only with the expense of installing the device but also with its maintenance and operation; that the expense of such installation and maintenance should include any additional tracks the defendant, or its successors or assigns, should desire to construct and operate at the point of crossing; and that the right of the relator to cross the defendant's track be confined to a single track. A decree was entered accordingly.

The errors assigned, while somewhat numerous, suggest but two principal questions; first, did the court err in charging the cost of maintaining and operating the interlocking device required to be installed to the relator; and second, did the court err in requiring that the relator provide and maintain interlocking devices for all additional tracks that the defendant may construct in the future at the point of crossing, and in limiting the relator to a single track.

In regard to the first question, we think it must be answered in the negative. It is true that the right of one railroad to cross the right of way and track of another is granted in this state by both the constitution and statute, and exists, perhaps, as a natural right independent of either, yet we

think this does not argue against the right of the road whose right of way and track is crossed to be made whole for all damages that directly ensue by reason of such crossing. The constitutional provision that private property shall not be taken or damaged for public or private use without just compensation having been first made and paid into court for the owner, applies to property owned by a rilroad company as well as to property owned by an individual. Although the property of a railroad company may be devoted to a public use, and be subject to control by the public authorities, the property itself is nevertheless private property. For injuries to it, for trespasses upon it, for its wrongful taking, actions will lie at the suit of the railroad company to the same extent as will actions by a private person where wrongful assaults have been made upon his property. Nor is there any distinction in this respect between a railroad's right of way and its other property. It is all, even its franchise, subject to sale on execution. In fine, the property of a railroad company is but private property burdened with a public use. As was said by Mr. Justice McKenna, in *Western Union Tel. Co. v. Pennsylvania R. Co.*, 195 U. S. 540, 570, 25 Sup. Ct. 133:

"A railroad's right of way has, . . . the substantiality of a fee, and it is private property even to the public in all else but an interest and benefit in its uses. It cannot be invaded without guilt of trespass. It cannot be appropriated in whole or part except upon the payment of compensation. In other words, it is entitled to the protection of the constitution, and in the precise manner in which protection is given. It can only be taken by the exercise of the powers of eminent domain, and a condition precedent to the exercise of such power is, . . . reasonable compensation to the owner of the property taken."

That the burden of maintaining an interlocking device at the point of crossing of these roads is an actual damage to the defendant company cannot be questioned. Indeed, the trial judge found, and that finding cannot be questioned here, that it would amount annually to so considerable a sum as five per

centum on $75,000. That it is the direct result of the re-
lator's act in crossing the defendant's road is likewise beyond
questioning. Why then should it not be charged to the com-
pany for whose benefit it is occasioned? It seems to us that
the question admits of but one answer; it should be so charged.

This question was before the supreme court of Minnesota
in *Winona etc. R. Co. v. Chicago etc. R. Co.*, 50 Minn. 300,
52 N. W. 657. In prescribing the terms under which the
second road might cross the first, the trial court required that
latter should install and maintain at its own cost an interlock-
ing device so as to enable trains to pass the crossing without
stopping and without danger of collision. On appeal by the
road desiring to make the crossing, this order was held to be
within the power of the trial court. On the question of cost
the court said:

"The purposes for which such requirements may be made
reach beyond the mere construction of the crossing, the lay-
ing the rails across, and extend to its operation after the
merely mechanical work of getting across is done, and for that
reason the court may prescribe not only what it may decide
to be necessary in constructing the crossing to make it least
injurious to the corporation whose track is crossed, but it may
also prescribe that the condition which it may deem proper
shall be maintained. Of course, where the action of the cross-
ing corporation makes necessary the expense of doing what
the court prescribes for the purpose of putting and keeping
the crossing in proper condition so as to do least injury to
the corporation whose track is crossed, the court may require
it to bear such expense."

In Montana, in the well considered case of *Butte etc. R.
Co. v. Montana U. R. Co.*, 16 Mont. 504, 41 Pac. 232, 50
Am. St. 508, 31 L. R. A. 298, the court held it proper to
provide that the expenses of a watchman found necessary to
be stationed at the point of crossing another railroad track
should be borne by the road desiring the right to cross. So
in *Flint etc. R. Co. v. Detroit etc. R. Co.*, 64 Mich. 350, 31
N. W. 281, it was held that the cost of maintaining signals,
or a crossing system, as well as of a watchman, was a proper

element to be considered by commissioners or a jury in award-
ing damages to a railroad company whose road is sought to
be crossed by another railroad.    See also, *Hydell v. Toledo
etc. R. Co.,* 74 Ohio St. 138, 77 N. E. 1066; *Memphis etc.
R. Co. v. Birmingham etc. R. Co.,* 96 Ala. 571, 11 South. 642,
18 L. R. A. 166; *Toledo etc. R. Co. v. Detroit etc. R. Co.,*
62 Mich. 564, 29 N. W. 500, 4 Am. St. 875; *West Jersey
etc. R. Co. v. Atlantic City & S. Traction Co.,* 65 N. J. Eq.
613, 56 Atl. 890; *Kansas Cent. R. Co. v. Com'rs of Jackson
County,* 45 Kan. 716, 26 Pac. 394.

The relator placed its principal reliance upon the cases of
*Lake Shore etc. R. Co. v. Cincinnati etc. R. Co.,* 30 Ohio St.
604; *Minneapolis etc. R. Co. v. Gowrie etc. R. Co.,* 123 Iowa
543, 99 N. W. 181, and *Detroit etc. R. Co. v. Osborn,* 189
U. S. 383, 23 Sup. Ct. 540, 47 L. Ed. 860.    But these cases
are founded upon statutes which expressly provide that the
expense of maintaining the crossing devices shall be appor-
tioned between the roads.    Whether such a statute would or
would not be in conformity with our constitution we need not
now inquire.    But the fact that the cases were based on a
statute deemed constitutional places them outside the ques-
tion presented here.

In regard to the second question, we think the court should
not have anticipated the future.    Since it found that the de-
fendant contemplated putting in an additional track in the
near future to accommodate its already accumulated business,
it was proper to provide that the interlocking device directed
to be installed and maintained should cover the additional
track should the same be actually laid within a reasonable
time.    But the order should not have included mere possi-
bilities.    It should not have included any and all additional
tracks which the defendant might desire to construct and op-
erate in the future at the point of crossing.    It may be that
changed conditions at the time the defendant desires to con-
struct the additional tracks will render it inequitable that the
relator provide and maintain the devices found necessary to

safeguard the crossings, or it may be that the relator, when it makes the defendant whole for the present damage, has done its full duty, and from thenceforth stands on an equal footing with the defendant, and that justice will require that the cost of maintenance of safeguards made necessary by the changed conditions shall be borne by both companies, or by that company for whose benefit it is installed; but these are questions not now necessary to decide; they are suggested merely to illustrate the point that future contingencies had best be left to future determination.   For the same reason the order confining the relator's right to cross to a single track should be modified.   If it wishes now to install a double track with proper interlocking devices at its own cost for installation and maintenance, it ought to be permitted to do so.   Should it in the future desire to double its track, the necessity therefor ought to be left for determination at that time.

The cause is remanded with instructions to modify the judgment in the particulars above indicated.   In other respects it will stand affirmed.   Neither party will recover costs.

MOUNT, RUDKIN, and DUNBAR, JJ., concur.

HADLEY, C. J. and CROW, J., took no part.