[No. 7882.    Decided June 28, 1909.]

CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY,
*Appellant*, v. TACOMA RAILWAY & POWER COMPANY,
*Respondent*.[1]

RAILROADS—CROSSING OTHER ROADS—FUTURE CONTINGENCIES—EXPENSE—DETERMINATION. Where, in proceedings by a railroad company to condemn the right to cross street railway tracks, the court determined that there was no present necessity for safety devices, it is improvident and error to order that the petitioner, or junior road, should pay the cost of safety appliances that might be required in the future by the city or any lawful authority.

Appeal from, and certiorari to review, an order of the superior court for Pierce county, Clifford, J., entered November 7, 1908, in favor of the defendant, adjudging a future necessity for the installation and maintenance of safety devices at a railway crossing, after a trial on the question of damages in a condemnation proceeding.    Reversed.

*H. H. Field* and *Geo. W. Korte*, for appellant.

*James B. Howe,* *B. S. Grosscup*, and *R. G. Sharpe*, for respondent.

FULLERTON, J.—The appellant is a railway company engaged in the construction of a transcontinental railroad. The respondent is a street railway company operating lines of street railways in the city of Tacoma.    On September 5, 1908, the appellant began this proceeding to condemn the right to lay, maintain, and operate its main tracks and appurtenant tracks over and across the tracks of the respond-

[1]Reported in 102 Pac. 778.

ent laid upon east D street, in the city of Tacoma. After notice to the respondent, a hearing was had on the application to condemn, before the superior court of Pierce county, at which hearing the respondent offered evidence tending to show that, in order to protect the public and avoid collisions and accidents, it was necessary to install some form of interlocking or other safety device at the place of crossing, and moved the court to direct that some such device be installed and maintained for all future time at the appellant's expense. The court refused to include this requirement in its order, but, at the conclusion of the hearing, entered the usual condemnatory order, annexing thereto, with the consent of the appellant, the following conditions, namely:

"First. Said Power Company shall have the right to retain the tracks now owned and operated by it at the point of crossing aforesaid as shown on the said plat attached to the said petition, and the said petitioner agrees that nothing shall be done, or suffered to be done by it that shall in any manner materially impair the usefulness of said existing tracks of the Power Company.

"Second. Said petitioner agrees that it will furnish the material for and construct and put in all crossing frogs and frog fixtures, rails and other structures necessary to make the crossing with the existing tracks of the Power Company at the point set forth and described in said petition and said plat attached thereto; all of said materials and the entire construction of said crossing to be furnished and done strictly in accordance with such reasonable plans and specifications as shall be prescribed by the Chief Engineer of said Power Company, but at the sole cost and expense of said petitioner. Said crossing shall be maintained and kept in good repair at the sole cost and expense of said petitioner. If said petitioner fails to make all such repairs and renewals within a reasonable time, when required by said Power Company, then said Power Company may make the same, and said petitioner agrees that in such case it will promptly refund and pay to said Power Company, the cost of such repairs and renewals.

"Third. In the event that overhead work is required of the said Power Company at said crossing, on account of the putting in of said crossing, said petitioner shall pay to said

Power Company, within 30 days after demand, a fair and just part of the cost and expense incurred by said Power Company in installing any overhead apparatus required by said crossing.

. "Fourth. The foregoing conditions and agreements shall extend·to and· be binding upon the respective successors and assigns of the parties hereto."

The court also further directed that a jury be impaneled to ascertain the amount of damages, if any, that would accrue to the respondent by reason of the construction of the crossing tracks. On the day fixed for the trial of the question of damages, the parties appeared before the court, another judge presiding, and waived a jury trial. Thereupon the appellant offered evidence tending to show that, because of the conditions imposed on it in the decree of condemnation, the respondent would not be damaged at all by reason of the crossing. The respondent did not offer any evidence on the question of damages, but did offer and introduce, over the objection of the appellant, evidence tending to show the necessity of safety appliances and devices held not to be necessary at the first hearing, and asked the court to require their installation and maintenance at the cost of the appellant. The court refused to find that there was any immediate necessity for an interlocking device or other safety appliance at the point of crossing, and refused to enter a judgment requiring the construction of any such device, but did enter, in addition to a judgment for the damages, which it assessed at one dollar, the following:

"The court at this time in ascertaining and fixing said compensation in the sum of one dollar ($1), in addition to requiring said crossing to be made by the petitioner under the provisions stipulated by the petitioner in its petition, adjudges that if and whenever, by reason of the· tracks of the petitioner crossing the tracks of the Tacoma Railway and Power Company, at the place and in the manner shown in the petition and exhibit attached thereto, the City of Tacoma, or other competent authority, shall lawfully require a standard interlocking device, or other safety appliance or

appliances, they shall be installed, maintained and operated at the cost of the petitioner herein but this provision shall not be construed as requiring the petitioner to pay or assume any portion of the expense of such interlocking device, or other safety appliance or appliances, which may be imposed by the City of Tacoma or other competent authority, upon the owners of any railroad tracks that may hereafter be constructed and maintained at said crossing or as precluding the petitioner from having contribution from such other owners for any portion of said expense."

It is this order the appellant seeks to review in this proceeding, bringing the judgment here both by appeal and writ of review.

Counsel, in their printed briefs and in their oral argument at bar, have discussed a number of questions which we do not feel called upon to notice specifically. The controlling principle has seemed to us to be comparatively simple. That part of the order complained of is both unnecessary and improvident. It is unnecessary because a proper determination of the rights of the parties does not call for its entry. After the court determined that there was no present necessity for interlocking or other safety devices, there was no requirement that it should attempt to provide for future contingencies. The necessary and proper order was one merely denying the application to require the immediate installation of a safety device. The order was improvident for the reason stated by us in *State ex rel. North Coast R. v. Northern Pac. R. Co.*, 49 Wash. 78, 94 Pac. 907. It attempts at this time to provide for contingencies which may arise in the future and which had better be left for regulation when they arise. As we said in that case, it may be that conditions will have so far changed at the time when the necessity for safeguards arise that it will be inequitable to require them to be installed at the appellant's cost. Moreover, to strike this part of the order can work no injustice to either party. If the right to have the cost of installation of these devices charged to the junior road be absolute, it

will be as absolute when the necessity for their installation arises as it is at the present time, in which event the junior road will be required to install them; while, on the other hand, if equitable principles may be allowed to intervene in the determination of the question, it is manifest that great injustice might be done the junior road by an order now fixing upon it irrevocably the burden of installing·and maintaining the devices at its own cost.

The order appealed from will be reversed, and the cause remanded with instructions to enter an order omitting the clause to which exception is taken.

RUDKIN, C. J., GOSE, MOUNT, CROW, and DUNBAR, JJ., concur.

CHADWICK, J. (concurring)—I concur in the result, but I am unwilling to subscribe to the expression that the rights and obligations of railroads with reference to crossings and the maintenance of safety appliances can be determined as a matter of equity. It is a subject which should, and from the nature of things must, depend upon the exercise of legislative will. This point was not made by counsel in the case of *State ex rel. North Coast R. v. Northern Pac. R. Co.*, reported in 49 Wash. 78, 94 Pac. 907, and I feel that the question should remain open. While an interlocking switch in some situations might be a proper device, its location and operation in the streets of a city, where its use would result in greater danger to life and property than a grade crossing, would not be tolerated. The rights and obligations of the companies are mutual, and owing to the public, and the hope that a court will at some future time require that safety appliances will be installed and operated at the expense of the junior road should not be held out. There is not much authority upon this subject, it is true, but the observations made in *Arkansas etc. R. Co. v. St. Louis etc. R. Co.*, 103 Fed. 747, seem to sustain my opinion.