## Lehigh & New England R. R. Co., Appellant, *v.* Delaware, L. & W. R. R. Co.

*Railroad companies—Grade crossing—Contract — Change of grade—Expenses of reconstruction—Equity—Injunction.*

A railroad company which has granted to another railroad company subsequently incorporated a license to cross its tracks at grade will not be restrained by injunction upon complaint of the latter, when the former proposes without consent of the crossing company to elevate its tracks and change its grade to accommodate increased traffic, although necessity is thus imposed upon the crossing company to reconstruct its own tracks to conform thereto.

Argued March 10, 1913. Appeal, No. 290, Jan. T., 1912, by plaintiff, from decree of C. P. Northampton Co., Sept. T., 1911, No. 2, dissolving preliminary injunction and dismissing bill in case of Lehigh and New England Railroad Company v. Delaware, Lackawanna and Western Railroad Company. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and MOSCHZISKER, JJ. Affirmed.

Bill in equity to restrain elevation of tracks at grade crossing.

SCOTT, P. J., filed an opinion as follows:

### THE FACTS.

1. The Northampton Railroad Company was incorporated in 1900 and subsequently, on the 22nd day of September, 1903, became merged into the plaintiff company by virtue of the provisions of the Act of March 22, 1901, P. L. 53. The Bangor and Portland Railroad, previously incorporated, was merged by similar proceedings into the defendant company.

2. Prior to the merger of either aforesaid company they executed the agreement and supplement thereto printed in this answer as Exhibits A and B, providing for a crossing of the tracks of the Bangor and Portland Company at grade by the Northampton Railroad then in course of construction. At that time the Bangor and Portland Railroad, under a prior charter, had been built and in operation many years. The crossing was thereupon installed, has been in use and maintained ever since by the plaintiff company. The agreements to which reference herein is made have no stipulations respecting the subject now in controversy, as stated in the next paragraph.

3. In March, 1911, the plaintiff was notified by the defendant company that in consequence of its purpose to employ heavier power equipment on its line it became necessary to elevate the tracks at the point of crossing to ease the grade. This contemplated plan involves an elevation of four feet, at that place, and some reconstruction of the main line. It involves also reconstruction of the tracks of the crossing company to conform to the intended grade. The superintendent of the Lehigh and New England expressed written consent thereto, March 28, if the expense thereof was borne by the defendant. This proposition was not accepted and no other consent was given. The changes were commenced

by the defendant on its road in July, and the plaintiff obtained this preliminary injunction which was continued by agreement until final hearing could be had. The cost of reconstructing the lines of the plaintiff company to conform to those changes for an available crossing is variously estimated by engineers from $1,200 to $8,200, based upon different plans.

Other facts have been found in answer to requests, but these are essential ones, and are here repeated in paragraphic form: Pittsburgh Stove & Range Co. v. Penna. Stove Co., 208 Pa. 37.

### CONCLUSIONS OF LAW.

A railroad company which has granted to another one a license to cross its tracks at grade will not be restrained by injunction upon complaint of the latter, a railroad subsequently incorporated, when the former proposes without consent of the crossing company to elevate its tracks and change its grade to accommodate increased traffic, although necessity is thus imposed upon the crossing company to reconstruct its own tracks to conform thereto.

### OPINION AND DISCUSSION.

While the particular matter here disputed does not seem to have passed into decision by any reported case, it may be settled by application of well established rules. Whatever else may be further said the defendant cannot be enjoined from pursuing its physical operations to elevate the tracks of its own lines. The right of complainant to a grade crossing at the designated point is definitely secured by its contract, but it is not admissible to say that consent of this crossing company must be obtained by the Delaware, Lackawanna and Western Railroad Company for improvement of its roadbed whenever increasing traffic or the use of more modern equipments may seem to make it desirable. This discretion is committed to the corporate board of directors, beyond

judicial control, unless asserted in bad faith, arbitrarily and wantonly in disregard of rights of others. I need not cite authority for this plain proposition. How far these agreements, made after the approval of the Act of June 7, 1901, P. L. 531, forbidding all grade crossings except as therein permitted by the court, were void, or voidable at the instance of the Commonwealth, is not the subject of discussion now. But the rights of the plaintiff company are subordinate to the elder franchise of the defendant which, through the merged company, had been operating its road for many years when this contract was made and the construction of the Northampton Railroad under a later charter was yet incomplete: Smethport R. R. Co. v. Railroad Co., 203 Pa. 176. It is not less so because the grant of the privilege by defendant's predecessor was a license (Lehigh and New Eng. R. R. Co. v. Railroad Co., 228 Pa. 350), and by the expenditure of money in the installation and maintenance has become irrevocable; for the crossing right still remains unimpaired.

Railroads are public highways subject to the police power of the Commonwealth, and for the purpose of such supervision their contracts are not to be treated as those merely of private corporations: Pittsburgh & Connellsville R. R. Co. v. Ry. Co., 77 Pa. 173, 186. As common carriers, therefore, each company is required to construct, reconstruct whenever necessary, maintain and operate its road so as to fulfil its public service obligation. It cannot divest itself of this duty to the State by any contract nor can the State by legislative act surrender its power to enforce it: Boston Beer Co. v. Massachusetts, 97 U. S. 25. Railroad companies, as between themselves, may lawfully contract for the manner in which expenses of repair and maintenance of crossings or extensions shall be borne, but such contracts will relieve neither from answer to the Commonwealth for default.

If then we must concede that, under all the proof of

its object here, the defendant has the absolute power to change the grade of its road at this place whenever its board of managers may exercise their discretion in order to accommodate it to changed conditions of traffic for either convenience or safety, and there is no contract between them providing for payment of the cost of reconstructing plaintiff's tracks to conform thereto, an event not foreseen by either when the argeement was executed, it logically follows that there is upon the part of defendant no legal obligation to pay it which could be enforced in a court of law by action.  Moreover the crossing was established for the benefit of the plaintiff company.  A chancellor cannot decree a liability where none otherwise exists, and exact payment as a condition for permitting the defendant to do that which without conditions we have no right to forbid.  Elaboration of these reasons for my conclusion would add nothing of value to what I have now written.

Now, November 6, 1911, this cause came to be heard and was argued by counsel.  Upon consideration thereof it is ordered, adjudged and decreed that the injunction heretofore granted be dissolved and the bill be dismissed.  The Lehigh & New England R. R. Company to pay the costs.  Let the prothonotary enter this decree nisi and give notice to the parties or their counsel sec reg.

Plaintiff appealed.

*Errors assigned* were various rulings on fact and law and the decree of the court.

*Edward J. Fox,* with him *William Jay Turner* and *James W. Fox,* for appellant, cited: Western N. Y. and Penna. Ry. Co. v. Buffalo, R. & P. Ry. Co., 193 Pa. 127; Park Steel Co. v. Allegheny Val. Ry. Co., 213 Pa. 322.

*J. H. Oliver* and *Kirkpatrick & Maxwell,* with them *D. R. Reese,* for appellee.

PER CURIAM, April 21, 1913:

The decree appealed from is affirmed on the opinion of the learned president judge of the Common Pleas.