## RIGHTS AS BETWEEN STEAM AND ELECTRIC RAILWAYS IN OVERHEAD CROSSINGS.

Common Pleas Court of Franklin County.

NORFOLK & WESTERN RAILWAY CO. v. THE COLUMBUS, NEWARK & ZANESVILLE ELECTRIC RAILWAY COMPANY ET AL.

Decided, November 20, 1915.

*Tracks and Crossings—Proceedings for Removal of an Electric Overhead Crossing—Where in the Way of Elimination of a Steam Railroad Grade Crossing—Rights at a Crossing of the Successor of the Company Building the Line—Power of Railway Companies to Agree as to Crossings Subservient to the Public Interest.*

A petition by a steam railway company praying for an injunction compelling an interurban company to remove an overhead crossing, which interferes with the grade crossing elimination work of the steam road, or that acting under the provisions of Section 8834, General Code, the court should fix by its decree the mode of such crossing and equitably apportion both the initial expense and the cost of maintenance, is good against demurrer.

*H. J. Booth* and *Henry Bannon*, for Norfolk & Western Railway Co.

*Webber, McCoy & Jones* and *Paul Martin*, for defendant railway companies.

*Henry L. Scarlett* and *Wilbur E. Benoy*, for the city of Columbus.

DILLON, J.

Counsel having requested that the court give a speedy decision upon the demurrer to the petition, the court has this day taken up the demurrer and has decided that the same should be overruled. The court can not go into any elaborate discussion of the very many questions presented, and indeed some parts of the opinion itself may be considered *obiter*, as to which more thorough and mature consideration may still be had.

The agreement for the crossing, made December 16, 1901, between the plaintiff and the Columbus, Buckeye Lake & Newark

Traction Company, was in writing, although the same was not witnessed or acknowledged, nor did the grant mention that it was for the benefit of the traction company's successors or assigns. The claim is made that the present operating company, the Ohio Electric Railway Company, possesses no rights under that contract. I am clearly of the opinion that this claim is not well founded. It must be remembered that there was a right existing on the part of the original traction company to cross the tracks of the plaintiff, and this right exists for all time. If the two companies were unable to agree, the law provides the method for determining the manner and the terms upon which said crossing should be made. The parties indeed need not have put their agreement in writing, so far as the validity of the agreement was concerned.

The right of a railroad corporation to sell or lease its property and to include therein every right and franchise which it possesses is too well established to need discussion here. Therefore, so far as this case is concerned, we must treat the present company exactly the same as if this controversy were between the plaintiff and the original traction company, the Columbus, Buckeye Lake & Newark Traction Company. It is for this very reason that the traction company has this right by law to cross the plaintiff's tracks, that the defendant's contention that the plaintiff's remedy is ejectment can not avail. The plaintiff can not eject the defendant traction company. It can only have a controversy with it in regard to the manner of crossing and exercising the right to cross. Therefore, I have deemed it unnecessary to go into a discussion of the rights growing out of an easement or a license, or to determine into which of these two classes the defendant's rights fall. Manifestly, we can not say that it is an easement in the sense that that term is used with respect to real estate, nor is it a license in the sense that it is simply an authority to go over the tracks, revocable at the will of the plaintiff. The plaintiff has no power to revoke the right of the defendants to go over its tracks. These common law distinctions are sometimes subtle, but in the face of our statute it would only lead here to useless quibble.

It is argued by the defendants, commencing at page 28 of the opening brief, that the grant of a mandatory injunction would deprive the defendant companies of their property without due process of law, and for such appropriation there must be a compensation, and likewise the defendants would be entitled to the right of trial by jury. This feature of the case has not yet been reached. Of course, the plaintiff, under the statute, has a right to pray for whatever it believes it is to be entitled to, but I am deciding this demurrer upon the theory that the plaintiff and the defendant traction company are unable to agree, and that that part of the prayer which asks in the alternative that the court exercise the powers conferred upon it by statute, and for general relief, is the vital part of the prayer. If at any time in the future a court should attempt to exercise unlawful power by appropriation, it will be time then for the defendants to raise this question.

It is further claimed by the defendants that the petition fails to show that the plaintiff had submitted plans, etc., to the state railroad commission as required by Section 8905 of the Revised Statutes. This section in its concluding paragraph provides that should a railroad company or its assigns hereafter raise the grade of its tracks under any of "such structures" * * *, the company shall pay all costs and damages thereby made necessary. There are two reasons, therefore, why this contention will not obtain. First, it simply provides for paying "costs and damages," and, secondly, I am of opinion that the expression "such structures" refers to the preceding section, 8903, and that said last named section, in my opinion, does not embrace the overhead structure involved here.

Probably the crux of the defendants' position is to be determined by a construction of Sections 8834 and 8835. It is claimed by the defendants that Section 8834 can apply only to the initial crossing, and after that has been once established, either by agreement or by decree of court, further power to act under this section is lost. I have given this section some considerable study, and I am unable to apply this strained interpretation of the statute, nor can I see any reason why, from a reading of the

statute, any such intention can be gathered. It would put two railroads in this situation: that, once having established their crossing, and the manner thereof, it would matter not what exigencies might in the future arise, or what changes might take place, they are each in a straight jacket, and therefore the public at large, as well as the companies themselves, are forever bound. It would leave the statute inoperative in the event of any sudden avulsion of nature in whatever form it might come, or of other situations whereby the entire ground would be so destroyed or removed that the tracks could not possibly exist at the same place they are now located, nor could the crossing be in the same place or in the same manner. Indeed, this very crossing is situated near a stream of water which by flood might cause such a condition as to make a change necessary. The plaintiff company is just in that situation today. By virtue of Section 8874 the city had a right to compel the plaintiff company to raise its tracks, and by virtue of Section 8863 the right is given the city and the railroad company to agree, rather than to have a lawsuit over the subject-matter. The plaintiff, therefore, is not to be penalized by having done that which the law encourages, to-wit, agree with the city rather than to have a lawsuit, and therefore I hold that its rights, so far as the defendant companies are concerned, are just as strong by virtue of its agreement under Section 8863 as if it were before the court here under Section 8874, having been compelled by the city to raise its tracks.

There has been a little argument made, that the parties have made an agreement which is now binding, and therefore the public at large is helpless, and the statute inoperative. I do not think this contention can be seriously urged. The power of railroad companies to agree with each other is still subservient to public interests, and they can not by agreement override the public necessities by any such private agreement. The language used in the case of *The L. & N. E. R. R. Co.* v. *Delaware & Lackawanna,* 240 Pa., 401, is most pertinent here.

An entry may be drawn accordingly.